Strafford
No. 94-795

THE STATE OF NEW HAMPSHIRE

v.

JOEL FROST

December 18, 1996

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*Andrew R. Schulman*, public defender, of Manchester, by brief and orally, for the defendant.

*Wiltrud R. Mott-Smith*, of Concord, by brief, for the Disabilities Rights Center, Inc., as *amicus curiae*.

BROCK, C.J. The defendant, Joel Frost, appeals his convictions on two counts of aggravated felonious sexual assault for engaging in sexual penetration with a "mentally defective" person in violation of RSA 632-A:2, I(h) (1996). We reverse and remand.

At the time of the incidents in question, the complainant, a mildly mentally retarded woman, was in her mid-twenties. The defendant was a residential aide who provided care to a developmentally disabled man named Rick Meserve at Mr. Meserve's home. The complainant was a friend of Mr. Meserve who often visited him. A friendship developed between the complainant and the defendant.

One day, the defendant drove the complainant to his own home. Once inside, they kissed, and the defendant told the complainant that he loved her. They went to the defendant's bedroom and engaged in digital penetration and sexual intercourse. The defendant was convicted of two charges stemming from this incident after a jury trial in Superior Court (*Mohl*, J.).

On appeal, the defendant argues that: (1) the trial court erroneously instructed the jury on the "mentally defective" element of RSA 632-A:2, I(h); (2) the trial court should have granted the defendant's motion for certain cognitive testing of the complainant; (3) the trial court should have allowed the defendant to introduce evidence that the complainant had a physically intimate relationship with another man in order to prove that she was legally capable of consenting to sexual relations; (4) RSA 632-A:2, I(h), as applied, violates the constitutional rights of retarded persons and their sexual partners, and their rights under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132 (1995); and (5) the evidence was insufficient for a rational jury to find that the complainant was "mentally defective" within the meaning of the sexual assault statute. The Disabilities Rights Center, Inc. filed an *amicus curiae* brief arguing that RSA 632-A:2, I(h) on its face violates the ADA.

## I. Jury Instructions

The defendant makes two arguments regarding the jury instructions. The defendant first challenges the jury instructions concerning the complainant's legal capacity to consent. *See* RSA 632-A:2, I(h).

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Vincent*, 139 N.H. 45, 48, 648 A.2d 478, 480 (1994) (quotation omitted). In reviewing the trial court's jury instructions, we evaluate any allegations of error "by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *Id.* (quotation omitted). Viewed in this light, the instructions must adequately and accurately explain each element of the offense. *See id.* at 49, 648 A.2d at 481; *State v. Newcomb*, 140 N.H. 72, 76, 663 A.2d 613, 616 (1995). We will reverse the trial court's decision if the jury instructions did not "fairly cover the issues of law in the case." *State v. Dedrick*, 135 N.H. 502, 505, 607 A.2d 127, 129 (1992).

RSA 632-A:2, I(h) provides that "sexual penetration with another person" is a felony "[w]hen, except as between married spouses, the victim is mentally·defective and the actor knows or has reason to know that the victim is mentally defective." We have construed this section to prohibit non-forcible sexual penetration "only with those persons whose mental deficiency is such as to make them incapable of legally consenting to the act." *State v. Degrenier*, 120 N.H. 919, 921, 424 A.2d 412, 413 (1980). In *Degrenier*, we stated that a person is mentally defective if he or she "suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." *Id.* at 921, 424 A.2d at 414 (quotation omitted).

The defendant urges us to read *Degrenier* narrowly, arguing that the phrase "appraise the nature of his or her conduct," refers only to the complainant's capacity to understand the nature and physical consequences of sexual conduct. The State, in contrast, urges us to read *Degrenier* as including a complainant's capacity to comprehend a "wide array of possible consequences" of sexual conduct, including how the conduct "will be regarded in the framework of the societal environment and taboos to which a person will be exposed."

These different interpretations reflect the conflicting concerns expressed by the parties. On the one hand, the State rightly is concerned that the law must protect the subset of "mentally defective" persons who are vulnerable to exploitation because of

their inability legally to consent. On the other hand, the degree of impairment in reasoning ability varies widely among those who might be characterized as "mentally defective." *See, e.g.,* Hayman, *Presumptions of Justice: Law, Politics, and the Mentally Retarded Parent,* 103 HARV. L. REV. 1201, 1214-15 (1990). The defendant and *amicus* correctly note that another subset of "mentally defective" persons *is* capable of legally consenting to sexual relations and thus does not require protection under subparagraph I(h).

■■ In order to protect the rights of both subsets of "mentally defective" persons, we further refine the *Degrenier* standard. We hold that a complainant is "mentally defective" within the meaning of RSA 632-A:2, I(h) only if he or she (1) suffers from a "mental disease or defect" and (2) is incapable of freely arriving at an independent choice whether or not to engage in sexual conduct. The second prong addresses a person's capacity to appraise in a meaningful way the physical nature and consequences of his or her sexual conduct, including its potential to cause pregnancy or disease. The emphasis is on the individual's *capacity* — capacity to learn about physical consequences and to make a decision based on whatever evaluative process the person chooses to employ, as long as the decision is legitimately the person's own. A complainant is not "mentally defective" merely because he or she does not *in fact* take any action to learn about consequences, or fails to consider alternatives prior to choosing a particular course of action.

■ We decline the State's invitation to expand the scope of the *Degrenier* test. To impose a requirement that a complainant be capable of understanding and evaluating the potential emotional and moral consequences of sexual activity, including the "societal environment and taboos," would require of "mentally defective" persons something that we do not require of others whom society permits to engage in sexual relations without criminalizing their partners' conduct. To impose such a requirement would result in a natural tendency for the jury, no matter how carefully instructed, to base its decision on its own moral judgment of the sexual conduct instead of on its determination of whether the complainant freely chose to engage in that conduct. *See State v. Sullivan,* 298 N.W.2d 267, 271 (Iowa 1980). The complainant's ability to "appraise the nature of his or her conduct," in order to be found legally capable of consenting, is limited to whether the complainant had the capacity to understand the immediate physical consequences of the charged sexual conduct, including the sexual nature of that conduct and its potential for causing pregnancy or disease.

■ The trial court's instructions to the jury included a statement that tracked the *Degrenier* standard. The jury was instructed to consider whether the complainant "suffers from a mental disease or defect which renders [her] temporarily or permanently incapable of appraising the nature of his or her conduct." The jury did not have the opportunity, however, to consider today's clarification of the *Degrenier* standard in determining whether this particular complainant was legally capable of consenting to sexual relations with the defendant. The jury heard evidence tending to show that the complainant did understand both the nature of sexual relations and the possibility of pregnancy and sexually transmitted diseases. The jury also heard evidence tending to minimize the complainant's understanding of sexual matters. *See State v. Call*, 139 N.H. 102, 104, 650 A.2d 331, 332-33 (1994). Because the trial court's charge to the jury failed to provide an adequate explanation of the standard for determining "mentally defective," we reverse these convictions and remand. *See Vincent*, 139 N.H. at 49, 648 A.2d at 481.

In the interest of judicial economy, we will address the defendant's remaining arguments to the extent they are likely to arise at a new trial. *See State v. Cressey*, 137 N.H. 402, 412, 628 A.2d 696, 703 (1993). The defendant next contends that the trial court erred in its instructions by adding two "factors" beyond the *Degrenier* test, thereby treating the *Degrenier* test as merely one factor among several to be considered by the jury in deciding whether the complainant was "mentally defective." We agree.

The trial court instructed the jury as follows:

> I also indicated to you that one of the — one part of the element is that the person is a mentally defective person. A person who is mentally defective is one who is legally incapable of consenting to the sexual act. In determining whether one is legally incapable of consenting you should consider a number of factors: Whether or not the person is of marked subnormal intelligence, whether the person is mentally defective in any recognizable and appreciable degree, whether the person suffers from a mental disease or a defect which renders them temporarily or permanently incapable of appraising the nature of his or her conduct.
>
> The fact that a person is developmentally disabled does not in and of itself mean that she is legally incapable of consenting to sexual relations, nor should you assume that a person is legally incapable of consenting to sexual relations simply because that person receives social services from the State. If you have a reasonable doubt as to

whether the victim in this case is a mentally defective person, you must find the defendant not guilty.

The *Degrenier* test, as refined in our decision today, constitutes the standard for the "mentally defective" element of RSA 632-A:2, I(h), *i.e.*, for determining whether the complainant was legally incapable of consenting to sexual relations with the defendant; it does not include consideration of additional factors. Accordingly, the court's three-factor instruction incorrectly instructed the jury as to the applicable law and, therefore, was erroneous. *See Vincent*, 139 N.H. at 48, 49, 648 A.2d at 480, 481; *Dedrick*, 135 N.H. at 505, 607 A.2d at 129. In addition, the court's use of the present tense in the first and last sentences of the above-quoted instruction was erroneous: in order to convict, the jury must find that the complainant *was* mentally defective *at the time of the alleged offense*, not at the time of trial. *See* RSA 632-A:2, I(h).

## II. Psychological Evaluation

The defendant next contends that the court should have granted his motion for cognitive testing of the complainant for use at trial to demonstrate that she was not mentally defective. He argues that a court-ordered psychological examination "seems particularly appropriate where the offense is based upon an alleged mental deficiency of the alleged victim," (quotation omitted), and that discovery, lay witnesses, and the general testimony of his own experts would be inadequate substitutes for expert psychological testimony based upon personal interviews and evaluation. *See State v. Briand*, 130 N.H. 650, 656, 547 A.2d 235, 239 (1988).

Whether or not to compel a prosecution witness to undergo a psychiatric examination is within the trial court's discretion. *State v. Stearns*, 130 N.H. 475, 490, 547 A.2d 672, 680 (1988). We find no abuse of discretion here. The defendant's stated purpose for the proposed examination was to conduct an intelligence test and possibly to generate an opinion on the ultimate issue of whether the victim satisfied the statutory test of being "mentally defective" under RSA 632-A:2, I(h). Neither purpose warranted the proposed examination. The defendant already had obtained, through discovery, the complainant's results from a test performed two years before the sexual contact. His own expert had testified at the first trial that such results normally remain consistent throughout a person's life.

The defendant's second reason for requesting the examination — to generate an opinion on whether the complainant was "mentally defective" under the statute — is no more persuasive.

The defendant's expert testified that his examination would have involved questions regarding the complainant's factual understanding of the sexual activity, specifically her understanding of "what sex was, the mechanics, sexual information, [and] the possible consequences of [a] sexual encounter." The defendant has not met his burden of showing that the questions his expert would ask or the evaluation he proposed would aid the jury. Even if the court had required the complainant to answer the questions that the defendant's expert planned to ask, the defendant has not shown that any expertise was necessary to determine, based on those answers, whether this complainant was capable of understanding the nature and physical consequences of the sexual activity. In other words, the defendant has not shown that this was a matter beyond the ken of the average juror which could not be determined by the jurors without the aid of expert testimony. *See State v. St. Laurent*, 138 N.H. 492, 495, 642 A.2d 335, 336 (1994). Nor has the defendant shown that the proposed expert would have knowledge, as to that determination, so superior to that of people in general that his views would probably assist the triers of fact. *See id.* at 495, 642 A.2d at 336-37; N.H. R. Ev. 702. The court did not abuse its discretion in denying the defendant's motion for a psychological examination under the circumstances of this case.

### III. Prior Conduct of Complainant

The defendant next argues that the court should have allowed him to introduce evidence that the complainant had a romantic and physically intimate relationship with another man in order to prove that she was legally capable of consenting to sexual relations. The proffered evidence was that she had a romantic relationship for many months, that she and her boyfriend engaged in sexual contact, and that the boyfriend had claimed that this contact did not include sexual intercourse because the complainant refused to consent. Just before trial, the prosecutor indicated that the last part of the proffer might be incorrect because, if the court permitted this line of questioning, the complainant would testify that "she had sex with [her previous boyfriend] on more than one occasion behind her parents' back."

The trial court found the relevance of the offered evidence to be "so marginal that it is outweighed by the victim's privacy interests," apparently applying the balancing test contained in New Hampshire Rule of Evidence 412. The admissibility of prior consensual sexual conduct is governed by the rape shield doctrine, which generally prohibits inquiry into the prior consensual sexual activi-

ties of victims of aggravated felonious sexual assault. *See State v. Dean*, 129 N.H. 744, 748, 533 A.2d 333, 336 (1987); RSA 632-A:6, II (Supp. 1995); N.H. R. EV. 412. Nonetheless, due process and the right of confrontation require the admission of such evidence when its "probative value in the context of that particular case outweighs its prejudicial effect on the prosecutrix." *State v. Howard*, 121 N.H. 53, 59, 426 A.2d 457, 461 (1981); *see Dean*, 129 N.H. at 748, 533 A.2d at 336.

■ The rape shield doctrine does not apply, however, when prior *non*-consensual conduct is at issue; evidence of prior non-consensual sexual conduct would be subject to evidentiary standards for admissibility, including New Hampshire Rule of Evidence 403, which would exclude the evidence if the probative value of the evidence would be substantially outweighed by its prejudicial effect. *See State v. Cox*, 133 N.H. 261, 265, 575 A.2d 1320, 1323 (1990). The record does not reflect whether the trial judge considered the preliminary question of whether the prior conduct was consensual, the answer to which would determine which rule of evidence controls the analysis. *See* N.H. R. EV. 104. Because it appears that the trial court treated this issue as though Rule 412 governs, and the parties agree, we will review the trial court's ruling under that standard. *See id.; Cox*, 133 N.H. at 265, 575 A.2d at 1323.

■ The defendant argues that the complainant's prior relationship was relevant because her prior sexual activity tends to prove that she had the capacity to consent to sexual activity. We disagree. The fact that the complainant engaged in prior sexual activity is not probative of her legal capacity to consent, any more than her sexual relationship with the defendant bears on that same issue. Her capacity to engage physically in sexual activity is not probative of her mental capacity to appraise the nature of her conduct.

> Where the lack of capacity is based on a permanent, organic condition, it logically follows that prior acts of intercourse cannot demonstrate that the victim understands the nature and consequences because the prior acts may have occurred due to the same lack of capacity. The risk of undue prejudice from the admission of such evidence is high, while the benefit to the defense is insubstantial.

*State v. Summers*, 853 P.2d 953, 959 (Wash. Ct. App. 1993). Accordingly, the trial court properly excluded evidence of the fact that the complainant had previously engaged in physical acts of sexual relations. *See Dean*, 129 N.H. at 748, 533 A.2d at 336.

In contrast, the potential testimony by the prior boyfriend that he and the complainant refrained from certain sexual activities because she *refused* to consent is highly probative of the issue of her capacity to decide whether or not to consent. So is other evidence of the complainant's thought process in making such decisions, assuming a reasonable proximity in time to the charged crimes. *See State v. Allen*, 128 N.H. 390, 397, 514 A.2d 1263, 1268 (1986). The issue the jury must decide is the complainant's mental capacity to choose whether to consent; the defendant is correct that evidence that she had exercised that mental capacity on prior occasions would be highly probative. Moreover, evidence of her engaging in such a reasoning process, and especially evidence of her refusing to consent to sex on prior occasions, would have at most a minimal prejudicial effect on her. *Cf. Howard*, 121 N.H. at 58-59, 426 A.2d at 460-61 (probative value of evidence balanced against prejudicial effect on prosecutrix under rape shield doctrine).

## IV. Constitutional and ADA Claims

The defendant and *amicus* argue that RSA 632-A:2, I(h) violates the Americans With Disabilities Act, 42 U.S.C. § 12132, because it sweeps too broadly, covering "mentally defective" individuals who do not need the special protection which subparagraph I(h) gives them. *Amicus* argues that subparagraph I(h)'s separation of *all* "mentally defective" persons for special treatment, including those who are legally capable of consenting, violates the ADA's non-discrimination provision, subjecting such persons to the chilling effect of potential criminal liability for their sexual partners. *See* 42 U.S.C. § 12101(a)(7) (1995); *cf.* 42 U.S.C. § 12101(a)(5) (discrimination includes overprotective rules and policies). The defendant argues that RSA 632-A:2, I(h), as applied in this case, violates the rights of "mentally defective" people to due process, equal protection, and privacy, as well as the ADA.

Our clarification today of the *Degrenier* standard, distinguishing people who are not capable of consenting from those who are capable of consenting, is the relief the defendant and *amicus* seek. Therefore we need not delve into an analysis of federal law, including whether the defendant has standing to raise the complainant's federal rights in his criminal trial.

## V. Sufficiency of the Evidence

The defendant contends that the evidence was insufficient to support a finding that the complainant was mentally defective within the meaning of RSA 632-A:2, I(h). To prevail on such a contention, the defendant must demonstrate that no rational jury, viewing the

evidence presented in the light most favorable to the State, could have found this element beyond a reasonable doubt. *State v. Allcock*, 137 N.H. 458, 461, 629 A.2d 99, 101 (1993). A review of the entire record reveals ample evidence upon which a rational jury could base its convictions. We therefore reject this argument.

*Reversed and remanded.*

All concurred.