Frost v. Cunningham                    CV-97-255-B    06/15/98

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Joel Frost</u>

v.                                        C-97-255-B

<u>Michael J. Cunningham, Warden,</u>
<u>New Hampshire State Prison</u>


<u>MEMORANDUM AND ORDER</u>


Petitioner Joel Frost was tried and convicted in November 1993 of aggravated felonious sexual assault committed against a "mentally defective" person in violation of N.H. Rev. Stat. Ann. § 632-A:2(I)(h) (1996).  After unsuccessfully challenging his conviction on direct appeal, Frost filed this petition for a writ habeas corpus pursuant to 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998).  Frost contends that based on the evidence presented at trial, no rational jury could have found the victim mentally defective beyond a reasonable doubt and, thus, that his conviction stands in violation of his Fourteenth Amendment right to due process of law.  Both Frost and respondent Michael J. Cunningham now move for summary judgment.

For the reasons that follow, I deny petitioner's motion and grant respondent's.

## I. BACKGROUND

Frost was convicted of sexually assaulting Keri Perkins, a developmentally disabled individual in her mid-twenties at the time Frost assaulted her. Frost met Perkins through Rick Meserve, another developmentally disabled individual with whom Perkins had attended the special-needs program at their local high school. After graduating from the program, Perkins and Meserve remained friends. Perkins, who continued to live with her parents, began visiting Meserve at his residence, a Developmental Services of Strafford County residential-care facility, on a biweekly basis over a two-year period. Because Perkins cannot drive, her parents had to drive her to see Meserve. At Perkins's parents' request, Frost, who worked as one of Meserve's live-in residential counselors, agreed to occasionally transport Perkins to and from Meserve's residence. Usually, Meserve accompanied Frost on these trips, but on occasion, Frost and Perkins returned to her house by themselves.

In January 1992, Perkins asked her mother if Perkins would get her period soon. Her mother assured her that she would,

2

explaining that a woman only stops menstruating if she is old or pregnant. Perkins's mother added that Perkins could not be pregnant because she had never had sexual intercourse. Upon her mother's making this remark, Perkins became hysterical and told her mother that Frost had had intercourse with her.

At trial, Perkins testified as to the details of how Frost had sexually assaulted her. Frost engaged in sexual intercourse with her twice, each time during Meserve's afternoon nap. The first incident occurred in the living room at Meserve's residence and the second in the staff bedroom. With the aid of an anatomically-correct drawing, Perkins identified the part of Frost's body that had touched her. Perkins stated that she did not like the sensation of intercourse and that it had lasted for a "long time." After assaulting Perkins, Frost told her not to tell her parents or he would "get into trouble," and then took her home.

In addition, Perkins's mother testified as to the severity of Perkins's disability. Perkins's disability is permanent in nature, the result of mental retardation. She could only attend school as part of a special-needs program and has minimal reading and writing skills. Perkins has never lived away from home; she cannot be left alone for extended periods of time because of the

3

risk that she will hurt herself; and she cannot qualify for a driver's license. Perkins is employed in the kitchen of a training school for handicapped persons, performing repetitive tasks under supervision. Her mother must serve as her representative payee because she is incapable of managing her money. Finally, a defense expert testified that because Perkins's disability is classified as a mild mental retardation, she would be expected to have cognitive abilities resembling those of a child between eight and twelve years old. On such evidence, the jury found Frost guilty of sexually assaulting a mentally defective person in violation of N.H. Rev. Stat. Ann. § 632-A:2(I)(h).

Frost appealed his conviction on the ground that there was insufficient evidence presented at trial for a rational jury to find that beyond a reasonable doubt Perkins was mentally defective within the meaning of the statute. Upon review, the New Hampshire Supreme Court rejected Frost's argument and affirmed his conviction. Thereupon, Frost filed the instant petition.

## I. STANDARD OF REVIEW

The standards of review that apply to habeas corpus claims arising from state court judgments are described in 28 U.S.C.A.

§ 2254(d) and (e). When a habeas corpus claim has been adjudicated on the merits in state court, the state court's legal determinations must stand unless they are "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254 (d)(1). The First Circuit recently held that in making such an assessment, a "federal habeas court . . . must undertake an independent two-step analysis." O'Brien v. Dubois, No. 97-1979, 1998 WL 257206, at *7 (1st Cir. May 26, 1998) (citing James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 30.2c (Supp. 1997)).

The habeas court must first determine whether the Supreme Court has "prescribed a rule that governs the petitioner's claim." O'Brien, 1998 WL 257206, at *7. If so, in assessing both questions of pure law and mixed questions of law and fact, the habeas court exercises plenary review of the state court decision, Liebman & Hertz, supra, § 30.2c, at 313-14, 317; see Thompson v. Keohane, 516 U.S. 99, 109-12 (1995) (holding that in examining mixed questions of law and fact, a federal habeas court exercises plenary review over a state court's application of a legal standard to the facts of a case); Stewart v. Coalter, 48 F.3d 610, 614 (1st Cir. 1995) (ruling that a federal habeas court

reviews insufficiency of evidence claims de novo), to "gauge[] whether the state court decision is 'contrary to' the [relevant Supreme Court] rule," O'Brien, 1998 WL 257206, at *7. The petitioner bears the burden of proving that the state court decision was contrary to the applicable federal law. Id. at *8.

In the absence of a governing Supreme Court rule, the habeas court takes the second step, assessing whether the state court's "use of (or failure to use) existing [Supreme Court] law in deciding the petitioner's claim involved an 'unreasonable application' of Supreme Court precedent." Id. at *7. In other words, "a state court's decision can and must stand unless the state court acted unreasonably in fashioning its own rule for the claim out of the Supreme Court's peripherally pertinent precedents." Liebman & Hertz, supra, § 30.2c, at 310 (When there is no clear Supreme Court precedent, "section 2254(d)(1) . . . validates reasonable, good faith interpretations of existing precedents." (internal quotations omitted)). At this stage of the review, the petitioner must show that the state court decision was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." O'Brien, 1998 WL 257206, at *9.

6

The state court's factual findings must be adopted unless they are "unreasonable" "in light of the evidence presented in the State court proceeding[s]." 28 U.S.C.A. § 2254(d)(2). Factual findings are entitled to a presumption of correctness which cannot be overcome unless the petitioner can point to "clear and convincing evidence" to support his claim that the facts were incorrectly decided. 28 U.S.C.A. § 2254(e)(1). I apply these standards in reviewing Frost's habeas corpus claim.[1]

## III. DISCUSSION

Frost contends that based on the evidence presented at trial, no rational jury could have found the victim mentally defective beyond a reasonable doubt and, thus, that his conviction stands in violation of his Fourteenth Amendment right to due process of law.[2] Because there is no dispute that Frost

---

[1] The fact that the matter is before me on a motion for summary judgment does not affect my analysis. The content of the trial transcript and the state court order on which my ruling is based are not in dispute and, thus, respondent is entitled to judgment as a matter of law.

[2] Frost also raises a number of other claims that, by his own admission, see Brief for the Defendant at 1-3, State v. Frost, 141 N.H. 493 (1996) (Nos. 93-828 & 94-795), were not preserved for appeal. As Frost has failed to establish cause and prejudice for his default, he cannot obtain review of those claims in this court. See 28 U.S.C.A. § 2254(b)(1)(A); Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Scarpa v. Dubois, 38

7

received an adjudication on the merits in state court with respect to this claim, see 28 U.S.C.A. § 2254(d); Neelley v. Nagle, 138 F.3d 917, 925 (11th Cir. 1998) (holding that a state court adjudicates the merits of an issue where the petitioner raises the issue on appeal and the state court makes findings addressing the petitioner's argument), I proceed to address the merits of his contention.

Both parties agree that the Supreme Court set forth the standard governing insufficiency of evidence claims in Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). See O'Brien, 1998 WL 257206, at *8 n.6. Under Jackson, in examining an insufficiency of evidence claim, the reviewing court must construe "the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime [proved] beyond a reasonable doubt." Jackson, 443 U.S. at 319. In doing so, the court does not "ask itself whether it believes that the evidence at . . . trial established guilt beyond a reasonable doubt" but only whether the record could reasonably support the jury's finding. Id. 318-19. The court must apply this standard with specific reference to each contested element of the offense -- here, the

F.3d 1, 6 (1st Cir. 1994).

8

definition of "mentally defective" -- as defined by state law. Campbell v. Fair, 838 F.2d 1, 4 (1st Cir. 1988).

Accordingly, I must conduct plenary review, see Liebman & Hertz, supra, § 30.2c, at 313-14, 317; Stewart, 48 F.3d at 614, of the New Hampshire Supreme Court's determination that the prosecution proffered evidence sufficient to permit a rational juror to find that Perkins was mentally defective beyond a reasonable doubt, see O'Brien, 1998 WL 257206, at *7. In doing so, unless I find that the record is so lacking in evidence that it could allow no rational juror to so conclude, I must hold that the New Hampshire Supreme Court's decision was not contrary to the rule established in Jackson.

New Hampshire Revised Statutes Annotated § 632-A:2(I) provides that a person is guilty of aggravated felonious sexual assault if "he engages in sexual penetration with another person . . . (h) [w]hen, except as between legally married spouses, the victim is mentally defective." Case law interpreting this provision has made clear that a person is deemed to be mentally defective if, because of a mental condition, she is "incapable of freely arriving at an independent choice whether or not to engage in sexual conduct." State v. Frost, 141 N.H. 493, 497 (1996). In other words, a person is mentally defective if, because of her

mental condition, she cannot appreciate the "immediate physical consequences of . . . [her] sexual conduct, including . . . its potential for causing pregnancy or disease." Id. Thus, for Frost to prevail on his claim, he must show that the evidence produced at trial was insufficient to permit a rational trier of fact to find that Perkins was incapable of understanding the consequences of her behavior.

The evidentiary record, however, is replete with evidence that would allow a rational juror to so conclude. For instance, Perkins's hysterical response to her mother's explanation that a woman could not become pregnant without having sexual intercourse tends to show Perkins's lack of understanding up to that point of the connection between sexual intercourse and pregnancy. In addition, Perkins's mother's testimony reveals that Perkins lacked the capacity to appreciate the consequences of her behavior. Perkins's mother stated, for example, that her daughter has never lived away from home; she cannot be left alone for extended periods of time because of the risk that she will hurt herself; she cannot qualify for a driver's license; and her mother must serve as Perkins's representative payee for employ- ment purposes because she is incapable of managing her money. Finally, the defense expert's testimony that Perkins would be

10

expected to have cognitive abilities resembling those of an eight- to twelve-year-old child also supports the conclusion that Perkins's ability to understand the consequences of her behavior is lacking.

Thus, petitioner has not shown that there was insufficient evidence to permit a rational trier of fact to find that Perkins was incapable of understanding the consequences of her behavior and, thus, was mentally defective. To the contrary, upon review of a record replete with evidence of Perkins's mental disability, the jury could and did reasonably conclude that beyond a reasonable doubt Perkins was incapable of understanding the consequences of engaging in sexual intercourse with petitioner. As a result, I hold that the New Hampshire Supreme Court's ruling affirming the jury's finding was not contrary to clearly established federal law and that Frost's insufficiency of evidence claim must fail.

## IV.  CONCLUSION

For the foregoing reasons, I deny petitioner's motion for summary judgment and grant respondent's. Accordingly, the clerk shall enter judgment for the respondent.

11

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

June 15, 1998

cc:   Joel Frost, pro se
      John Kissinger, Esq.