Belknap
No. 97-574

THE STATE OF NEW HAMPSHIRE

v.

ELWIN MOSES

March 18, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, attorney, on the brief and orally), for the State.

*Carl D. Olson*, public defender, of Littleton, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Elwin Moses, appeals his jury convictions on two counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996) (amended 1997, 1998), and three counts of simple assault, *see* RSA 631:2-a (1996), arguing that the Superior Court (*Perkins*, J.) gave an erroneous jury instruction and erroneously limited cross-examination of the victim. We affirm.

The defendant met the victim in 1995 and began a dating relationship with her in January 1996. They frequently engaged in sexual activity which involved, *inter alia*, role playing, physical restraints, slapping, wrestling, and scratching.

The defendant moved in with the victim and her four-year-old child in August 1996. In November 1996, the defendant became extremely jealous of the victim's ex-husband and began accusing the victim of having an affair with him. On November 30, the victim and her ex-husband took their child to see a movie. After the movie, the

victim went to pick up the defendant at his brother's house around 10:00 p.m., but learned that he had already left to go home.

When the victim returned home, the defendant was watching television and drinking beer. The victim and the defendant did not speak as she prepared her child for bed. While the victim was getting ready to go to bed, the defendant entered the bathroom and asked her, "What am I, too good for you to say 'hi' to now?" The victim returned to the bedroom. The defendant entered the bedroom and told the victim that "[i]t's time for you to give me your duties now." He pushed the victim onto the bed and sexually assaulted her.

At approximately 2:00 a.m., the victim noticed that the defendant had fallen asleep, and she went to the living room to remove photographs and keys from his wallet. The defendant awoke, found the victim in the living room, and brought her back to the bedroom. Around 7:30 a.m., the defendant wakened the victim and sexually assaulted her. When the assault was over, the victim told the defendant their relationship was finished, and threw him out of the apartment. A physical examination later that day revealed, in addition to evidence of recent sexual activity, two superficial abrasions on each side of the victim's hip.

The trial court sentenced the defendant to twenty to forty years at the State prison. He appeals, first arguing that the following jury instruction constituted error:

> The law does not require that the testimony of [the victim] be corroborated. This means that if you find that [the victim's] testimony is creditable, in other words, if you believe her testimony, then you may return a verdict of guilty without additional evidence. This does not mean that simply because [the victim] took an oath to tell the truth, you must accept her testimony as true.

The defendant argues that this instruction impermissibly allowed the jury to convict the defendant if they found the victim's testimony credible, but not necessarily believable beyond a reasonable doubt.

When reviewing jury instructions, we evaluate allegations of error "by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *State v. Frost,* 141 N.H. 493, 496, 686 A.2d 1172, 1175 (1996) (quotation omitted). We determine if the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not "fairly cover the issues of law in the case." *Id.* (citation omitted).

■ When viewed in isolation, the instruction cited above would seem to permit conviction merely if the jurors believed the victim was a credible witness. In looking to the entirety of the jury instructions, however, we conclude that other instructions specifically informed the jury that a conviction must be based on proof beyond a reasonable doubt. In the very next paragraph of instructions, the trial court stated:

> In deciding whether the State has proven one or more of the charges against the defendant beyond a reasonable doubt, you must decide the credibility of [the victim], just as you must decide the credibility of every other witness. You must apply the same factors to decide her credibility as you apply to all other witnesses.

The trial court had already instructed the jury that "[i]n deciding whether the State has proven the charge against the defendant beyond a reasonable doubt, you must decide the credibility of witnesses; that is, it is up to you to decide who to believe." The trial court gave the jurors guidance on how they could measure credibility, as well as a specific instruction on the reasonable doubt standard:

> A reasonable doubt is just what the words would ordinarily imply. The use of the word reasonable mean[s] simply that the doubt must be reasonable rather than unreasonable. It must be a doubt based on reason. It is not a frivolous or fanciful doubt nor is it one that can easily be explained away. Rather, it is such a doubt based upon reason as remains after consideration of all of the evidence that the State has offered against it.
>
> The test you must use is this. If you have a reasonable doubt as to whether the State has proven any one or more elements of the crime charged, you must find the defendant not guilty. However, if you find that the State has proven all of the elements of the offense charged beyond a reasonable doubt, you should find the defendant guilty.

Although the one instruction cited by the defendant does not contain all aspects of the applicable law, when all of the instructions are read in their entirety, the trial court accurately informed the jury of the applicable law, which would not leave reasonable jurors confused.

Next, the defendant argues that the trial court erred by limiting his cross-examination of the victim regarding their relationship. "In determining the limits of cross-examination, a trial court must

balance the prejudice, confusion, and delay of the proffered testimony against its probative value." *State v. Rodriguez*, 136 N.H. 505, 509, 618 A.2d 810, 813 (1992). We review decisions limiting the scope of cross-examination for abuse of discretion. *See State v. Roberts*, 136 N.H. 731, 744, 622 A.2d 1225, 1234 (1993).

The defendant sought to elicit testimony indicating that he and the victim began a consensual adulterous relationship in January 1996, while the victim was still married and living with her husband. The trial court ruled that the defendant could not adduce evidence that the relationship began as an adulterous affair. At trial, the defendant argued, based on the nature and frequency of prior sexual relations with the victim, that she consented. Although the defendant was not allowed to elicit testimony indicating that his relationship with the victim began as an adulterous affair, he was able to introduce testimony indicating that they had a consensual relationship lasting more than ten months. *Cf. State v. Rogers*, 138 N.H. 503, 507, 642 A.2d 932, 935 (1994) (limiting cross-examination in sexual assault case to relevant factual matters). The defendant was also permitted to inquire into the nature of some of his sexual experiences with the victim. Because the defendant was able to establish that he had aggressive, consensual sex with the victim in the past, evidence establishing that the relationship was also adulterous would not be relevant to whether the victim consented on the evening that she was assaulted.

The defendant argues that the evidence regarding the victim's adultery "does have to do . . . with truthfulness and dishonesty because of the nature of the extramarital affair," which occurred in the victim's marital home. While the defendant did not indicate the precise purposes for this testimony at trial, he noted that "cheating on one's spouse is probative of a person's character for truthfulness or untruthfulness." The State noted that "[t]he only apparent purpose to be served by adducing the proposed testimony would be to paint the victim as an immoral person."

■■ The defendant argues that under New Hampshire Rule of Evidence 608(b), adultery is probative of the witness's character for truthfulness or untruthfulness. Under Rule 608(b) a witness may, in the trial court's discretion, be impeached by specific instances of conduct if probative of truthfulness or untruthfulness. Adultery is a disfavored act with potentially weighty consequences under both civil and criminal law. *See, e.g.*, RSA 458:7, II (1992); RSA 458:16-a, II(1) (1992); RSA 645:3 (1996). An adulterer, however, may be a competent witness, *cf. Whitcher v. Davis*, 70 N.H. 237, 238, 46 A. 458,

458 (1899), and may not be impeached on cross-examination based solely on the existence of an adulterous relationship when the relationship is collateral to the charged crimes. *Cf. Casterline v. State*, 736 S.W.2d 207, 212 (Tex. Ct. App. 1987). Although illegal and immoral, "adultery do[es] not relate directly to truthfulness." 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 608.12[4][b][i] (J. McLaughlin ed., 2d ed. 1998). Cross-examining a witness about marital infidelities, whether committed with the defendant or another, is generally not a proper basis for impeachment. *People v. Makela*, 383 N.W.2d 270, 275-76 (Mich. Ct. App. 1986); *Casterline*, 736 S.W.2d at 212; *see also United States v. Stone*, 472 F.2d 909, 916 (5th Cir. 1973), *cert. denied*, 449 U.S. 1020 (1980); *cf. State v. Howard*, 121 N.H. 53, 60, 426 A.2d 457, 462 (1981) (rejecting "the old concept of equating a woman's promiscuity with lack of credibility"). We conclude that the trial court did not abuse its discretion in limiting the defendant's cross-examination of the victim.

We have reviewed the record with respect to the defendant's remaining arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.