Strafford
No. 98-177

THE STATE OF NEW HAMPSHIRE

v.

JEANNE DONNELLY

December 27, 2000

*Philip T. McLaughlin,* attorney general (*N. William Delker,* assistant attorney general, on the brief and orally), for the State.

*Desfosses Professional Association,* of Portsmouth (*Philip Desfosses* on the brief and orally), for the defendant.

BRODERICK, J. The defendant, Jeanne Donnelly, appeals her conviction on eleven counts of forgery, *see* RSA 638:1 (1992), arguing that the Superior Court (*Mohl,* J.) erred by permitting the testimony of two prosecution witnesses who asserted their rights against

self-incrimination on matters relating to her theory of defense. We affirm.

The following facts were adduced at trial. The defendant was a self-employed bookkeeper whom the victim, Stephen DiGiovanni, hired in 1994 to work for his business, Ace Transmissions (Ace). After two years of employment, DiGiovanni and his wife accused the defendant of forging eleven checks, which had been drawn on the company's checking account. She admitted signing DiGiovanni's name to the checks but asserted that she did so with his permission. The defendant claimed that nine of the eleven checks were part of a scheme to convert taxable business income into unreported cash and that the remaining checks represented personal loans to her.

The defendant testified that DiGiovanni followed very questionable practices with cash in the operation of his business, which she believed amounted to tax evasion. She recounted that Ace received cash for vehicle repairs and inspections, which it did not report as income, and presented a former Ace employee who testified that he was often paid in cash. The defendant recalled an occasion when DiGiovanni used a company check to make a $7500 loan to a friend with the understanding that it would be paid back in cash. According to the defendant, DiGiovanni accounted for the loan as a business expense for the purchase of a snap-on tool box. When confronted with the fabrication, DiGiovanni allegedly told the defendant that he would "cover his tracks" should the Internal Revenue Service (IRS) audit him. The defendant threatened to report DiGiovanni to the IRS but never did.

At a pretrial hearing, DiGiovanni learned that the defendant claimed that he fabricated the charges against her to discourage or discredit any report she might make to the IRS, and that to establish this defense, she intended to cross-examine him about alleged tax evasion practices at Ace. He invoked the Fifth Amendment privilege against self-incrimination to protect himself from this line of inquiry. Specifically, he did so to prevent the defendant from questioning him about the handling of cash receipts at Ace and the practice of paying some employees in cash.

The trial court ruled that the defendant would not be permitted to make such a broad inquiry, but did allow questions, which DiGiovanni was to answer without invoking his Fifth Amendment privilege against self-incrimination, about the eleven checks at issue, including whether DiGiovanni gave the defendant permission to cash the checks as part of a scheme to avoid tax liability. The trial court later determined that because DiGiovanni's wife was a

co-signer of the tax returns, she was entitled to the same Fifth Amendment protections extended to her husband.

In response to the trial court's ruling, the defendant moved to prevent the DiGiovannis from offering any testimony on the basis that her proposed inquiry on cash handling practices was integral to her defense, and that by prohibiting such questioning the trial court undermined her State and Federal constitutional rights to confront witnesses against her. The trial court denied the defendant's motion with the following explanation:

> I disagree with the defendant as to whether or not Mr. DiGiovanni can testify on direct . . . notwithstanding . . . that he is asserting the Fifth [to] certain questions that he may be asked or would be asked on cross[-]examination. . . . [H]e has an absolute right to assert that. And when that comes in conflict with the defendant's right to manner [sic] an adequate defense, the Court needs to engage in a balancing of those interests. And in this case, it seems to me the defendant certainly has the right to cross[-]examine the defendant to ask him about these transactions to put forth his theory as to these transactions. And I believe I heard Mr. Defossess indicate earlier that he had reams of documents to prove his theory, I think you'd said even beyond a reasonable doubt. So, given that there is an alternative means by which this evidence can be put before the jury, that is through the documentary evidence compiled by counsel, I believe that it's appropriate in this case to sustain the witness' claim of Fifth Amendment Privilege, yet to allow his testimony on direct with respect to the transactions and whether or not the defendant in this case had any authority to cash the checks that she cashed.

(Brackets omitted.)

The trial court noted that the defense theory concerning DiGiovanni's motive to fabricate was "very attenuated" and was "awfully close" to being collateral to the central issues in the case. Following the court's ruling, the State stipulated to the admission of every document that DiGiovanni refused to authenticate. At the close of the case, the trial court informed the jury that the DiGiovannis had sought the protection afforded by the Fifth Amendment:

> A person cannot be compelled to be a witness against him or herself. That applies to the defendant. It also applies to a

witness in a case. In this case, the defendant proposed to ask both Steven and Jill DiGiovanni about certain practices in the operation of Ace Transmission, that could involve allegations of violations of tax laws or regulations. The DiGiovannis have a right to refuse to answer questions that could incriminate them in subsequent proceedings. The DiGiovannis asserted that right and I prohibited any questions about such practices. I wanted to make sure you had that instruction as part of the, at the close of the evidence in this case and before final arguments.

With the aid of the instruction, defense counsel concentrated much of his closing argument on the fact that the DiGiovannis had invoked their Fifth Amendment privilege and urged the jury to infer that the DiGiovannis had violated tax laws and, thus, had a motive to frame the defendant. The jury found the defendant guilty of all eleven counts of forgery. This appeal followed.

The defendant argues that her right to confront her accusers under the Sixth Amendment of the United States Constitution and Part I, Article 15 of the New Hampshire Constitution was violated when the trial court, knowing that the DiGiovannis had invoked their rights against self-incrimination on issues central to her defense, permitted them to testify. She asserts that the trial court erred by balancing her right to confrontation with the DiGiovannis' rights against self-incrimination because the subject of tax evasion was integral to her defense. She contends that the trial court's ruling was unfairly prejudicial because she could not confront DiGiovanni to undermine his self-portrayal as a mechanic who knew nothing about business, banking, or the IRS. Thus, the trial court unfairly prevented her from proving that DiGiovanni was a sophisticated businessman in a vulnerable position because of his questionable business practices and had a motive to fabricate the charges against her.

The State contends that the trial court appropriately balanced the parties' competing interests and acted properly in permitting the DiGiovannis' testimony because the proposed cross-examination dealt with collateral issues. Furthermore, the State argues that the defendant failed to establish any prejudice.

We consider first the defendant's arguments under Part I, Article 15 of the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350-51 (1983), employing federal cases only to aid in our analysis. Because the New Hampshire Constitution is at least as protective as the Federal Constitution in this area, we

need not make a separate federal analysis. *See State v. Newcomb*, 140 N.H. 72, 78, 663 A.2d 613, 617 (1995).

■ It is undisputed that a defendant has a fundamental right to cross-examine prosecution witnesses. *See* N.H. CONST. pt. I, art. 15; *State v. Chaisson*, 123 N.H. 17, 32-33, 458 A.2d 95, 102-03 (1983). The defendant's right may, however, be restricted when it conflicts with a witness's right against self-incrimination. *See, e.g., State v. Lavallee*, 119 N.H. 207, 210, 400 A.2d 480, 482 (1979). A trial court, presented with these competing constitutional protections, must engage in a delicate balancing, weighing the conflicting interests of the parties involved. *See id.* We defer to the trial court's ultimate determination absent an abuse of discretion. *See, e.g., State v. Moses*, 143 N.H. 461, 464, 726 A.2d 250, 252 (1999).

. When a witness's right to remain silent conflicts with a defendant's right to cross-examine, a distinction must be drawn between cases in which the witness's assertion of the privilege involves collateral matters bearing on credibility and those cases "in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination." *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963). Direct matters typically involve testimony related to the "elements or specific events of the crimes charged." *United States v. Gullett*, 713 F.2d 1203, 1208 (6th Cir. 1983). As a general rule, where a witness seeks to assert his right against self-incrimination on collateral matters, his constitutional shield trumps a defendant's right to confrontation. *See Cardillo*, 316 F.2d at 611. This is so because in such instances, there is little danger of prejudice to the defendant. *See id.*

Conversely, when a witness's testimony is closely related to the charged crime, the assertion of a self-incrimination privilege will almost always yield to a defendant's right to cross-examine. *See United States v. Stubbert*, 655 F.2d 453, 458 (1st Cir. 1981). It is necessary to recognize a distinction between direct and collateral matters to protect a defendant from the "substantial danger of prejudice [when] deprived of the right to test the truth of [the witness's] direct testimony." *Cardillo*, 316 F.2d at 611.

We must decide whether the proposed cross-examination of the DiGiovannis related directly or collaterally to the defendant's guilt. The record reflects that the subject matter of the proposed cross-examination, which was restricted by the trial court, related to cash transactions that had no direct relationship to the eleven forged checks. DiGiovanni asserted his right against self-incrimination only with respect to certain cash receipts; namely, those received from

car repairs and inspections and those used to pay employees in cash. The defendant was allowed wide latitude to cross-examine DiGiovanni about the eleven checks at issue, including whether he had given her permission to cash them in order to advance a tax evasion scheme, and about his knowledge of the IRS and tax laws generally. The defendant was also permitted to examine DiGiovanni about his questionable business practices and the disputes she had with him about those practices. Because the areas precluded from cross-examination were essentially collateral to the charged crimes and the cross-examination of the DiGiovannis provided the defendant with ample opportunity to demonstrate an illicit motive, the trial court did not err by restricting the scope of the defendant's cross-examination.

Even assuming that the requested examination should have been allowed, the defendant demonstrates no prejudice associated with the trial court's ruling. The defendant testified on direct examination that Ace handled many cash transactions and the State stipulated that during a six-month period, in which Ace work orders reflected thousands of dollars in cash receipts, none of the company's bank deposit slips referenced cash deposits. In fact, the State stipulated that no cash deposits were made during the relevant period, and the jury was so instructed by the court. In addition, defense counsel acknowledged having reams of document to enable him to "prove beyond a reasonable doubt" that DiGiovanni engaged in tax evasion. The State stipulated to the authenticity of the documents, and they were admitted. Finally, the trial court instructed the jury that the DiGiovannis had invoked their privilege against self-incrimination in response to proposed defense inquiry about alleged violations of tax laws. Indeed, defense counsel highlighted the significance of the DiGiovannis' Fifth Amendment assertion in his closing argument:

> [T]he only way you can take the Fifth Amendment is if the questions and answers to those questions would put you in a position of self-incrimination in a criminal matter . . . . Exposure to criminal liability. And that's what the Judge found and that's why he ordered that they could and ordered us not to ask questions about the tax fraud of the DiGiovannis, because, and the inference is clear, the reason they're taking the Fifth Amendment is because they are guilty of it. They did it. They were scamming the Government on a large scale.

■ In sum, the trial court properly exercised its discretion by limiting the defendant's cross-examination and permitting the DiGiovannis' testimony. The defendant was accorded ample opportunity to impeach DiGiovanni's credibility generally and to advance her theory that the DiGiovannis had a motive to fabricate the charges against her.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; BROCK, C.J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.