Coos
No. 99-492

### THE STATE OF NEW HAMPSHIRE

v.

### ANDREA AYOTTE

June 22, 2001

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief, and *Richard M. Samdperil*, assistant appellate defender, of Manchester, orally, for the defendant.

NADEAU, J. The defendant, Andrea Ayotte, appeals her conviction following a jury trial in the Superior Court (*Smith*, J.) on two counts of arson. *See* RSA 634:1, II(a) (1996) (amended 1998). She argues that the trial court erred by admitting evidence of an earlier fire that she had reported to the authorities and by failing to grant a mistrial after this evidence was presented to the jury. The defendant also argues that the two indictments are unsupported by the plain meaning of the arson statute. We reverse and remand.

The following facts are uncontested. The defendant concedes that in the early morning hours of January 7, 1999, she started a fire that caused significant damage to a single structure in downtown Berlin, wherein both an IGA Foodliner and a State of New Hampshire Liquor Store operated (IGA Foodliner building). The entire structure is owned by Theresa Rousseau and is leased to these businesses.

Late on the previous evening, the defendant had reported another fire (prior fire) at a business near the IGA Foodliner building. Upon arrival at the scene, the authorities found the defendant, who directed them to a concealed area in the basement of the structure where the prior fire was burning. The defendant answered a few questions from the authorities. She indicated her dog had noticed the fire while they were walking together. The prior fire was extinguished without incident.

Before trial, the defendant filed a motion *in limine* to exclude testimony regarding the prior fire, arguing that New Hampshire Rule of Evidence 404(b) excludes "all evidence of uncharged misconduct or other crimes alleged to have been committed by a defendant if the purpose of the evidence is to prove the character of a person in order to show that the person acted in conformity therewith." At a hearing on the motion, the State argued that the prior fire was admissible because it related to the defendant's presence and opportunity. Responding, the defendant gave up her initial argument that the entire episode regarding the prior fire should be excluded, but continued to assert that reference to the fire itself would be prejudicial to her case. The trial court denied the defendant's motion.

At trial, the prosecution's opening statement mentioned that the defendant called in the prior fire and that she "showed the firemen where the fire was, because initially they couldn't find it." The

prosecutor told the jury that "almost an hour to the minute from the time that the first alarm was sounded, or she called the first time, there was a second fire called in." The State also called witnesses to testify regarding the prior fire. During her opening statement, the defendant conceded that she started the fire to stay warm and claimed it later went out of control by accident.

During the State's case, the prosecutor asked Dana Hinkley, a captain with the Berlin Fire Department, if he had spoken to the defendant regarding the investigation of the prior fire. The captain began to explain how the prior fire started. At that point, the defendant objected, arguing that the prior fire was not relevant and that the captain's testimony intimated that the prior fire was started in a manner similar to the fire for which the defendant was being charged.

Apparently, the trial court agreed, and offered the following curative instruction:

> Ladies and gentlemen, what this witness has been testifying about for the last five minutes or so is for informational purposes only. This defendant is not charged with any crime revolving around the fire that this witness is now describing. So, for the purposes of this trial, you are to ignore that as it relates to this defendant.

Nevertheless, the prosecutor continued to inquire about the events surrounding the prior fire, and Hinkley later testified, "Because we knew we had a suspicious fire at this one, we wet that building down pretty heavy so the person who lit it couldn't come back and light it again." Again the defendant objected, this time asking for a declaration of mistrial. The trial court chastised the prosecutor, attributing the reason for the prejudicial answers to "poor preparation." Nevertheless, the court denied the motion for mistrial, but offered a curative instruction. Finally, during the charge, the trial court gave the following admonishment:

> There has been testimony, ladies and gentlemen, about another fire earlier in the evening. You are instructed to ignore that testimony as it relates to this defendant. The fact that there was another fire should be given no weight at all in your deliberations to determine the defendant's guilt or innocence.

The defendant was convicted, and this appeal followed.

The defendant argues that she is entitled to a mistrial because admission of the evidence of the prior fire was irrelevant and unduly

prejudicial in violation of New Hampshire Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"[E]vidence of other bad acts is inadmissible unless it is relevant for a purpose other than to prove the defendant's character or disposition, there is clear proof the defendant committed the other acts, and the prejudice to the defendant does not substantially outweigh the probative value of the evidence." *State v. Dukette*, 145 N.H. 226, 231 (2000) (quotation omitted).

> [T]he State, in offering evidence of other wrongs under Rule 404(b), must state the specific purpose for which the evidence is offered and must articulate the precise chain of reasoning by which the offered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity.

*State v. McGlew*, 139 N.H. 505, 509-10 (1995).

■ The State contends that evidence of the prior fire was relevant to establish opportunity because the defendant reported the prior fire from a location and at a time proximate to the charged fire. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. EV. 401. At the motion hearing, before the defendant conceded she had started the charged fire, the defendant's opportunity to set the charged fire was relevant. Nevertheless, once the defendant conceded at trial that she started the fire, her presence at the prior fire scene was no longer relevant to establish opportunity. Thus, when the defendant objected during Captain Hinkley's testimony, arguing that the prior fire had no relation to the case, evidence of that fire was no longer relevant, and was prejudicial to the defendant's case. Despite the trial court's admonishments, the prosecutor continued to ask about the defendant's presence at the prior fire and, during the closing argument, the prosecutor highlighted the defendant's involvement with the prior fire.

"Introduction of such evidence, however, does not automatically require a mistrial." *State v. Kerwin*, 144 N.H. 357, 360 (1999) (quotation omitted). Rather, the prejudicial impact to the defendant must be so great "that it would be impossible for any curative instruction to be effective to cure the taint." *Id.* The prejudicial effects of the inadmissible evidence must be such that "the trial court cannot unring a bell once it has been rung." *Id.* at 361.

In *State v. Woodbury*, 124 N.H. 218 (1983), we held that a mistrial was required in a robbery case after a police officer testified to the defendant's statement: "I don't know why you're charging me with armed robbery. I've been that route before. I've been charged with armed robbery before." *Id.* at 220. We reasoned this statement raised the "potentiality for prejudice . . . [and] the fear that the generality of a jury's verdict might mask a finding of guilt based on an accused's past or alleged criminal acts." *Id.* (quotations and brackets omitted). Similarly, in *State v. LaBranche*, 118 N.H. 176 (1978), a mistrial was required after several witnesses obliquely referenced a second but untried indictment for a similar offense. Even though the witnesses did not reveal the specifics of the untried indictment, a mistrial was required because the jury could have easily discerned that the defendant was "allegedly culpable for other instances of criminal conduct closely related to the charge before it." *Id.* at 179.

We have noted "the degree of prejudice inherent in a reference to another charge may depend upon the similarity of the 'other incident' to that for which the defendant is currently on trial." *State v. Drew*, 137 N.H. 644, 649 (1993).

The evidence of the prior fire in this case is both similar to the charged offense and extremely prejudicial. During the trial, the State offered extensive detail about the prior fire and insinuated during the opening statement and closing argument as well as throughout the testimony of Captain Hinkley that it believed the defendant started the prior fire. In fact, during the pre-trial hearing, the State indicated its suspicion that the defendant "would have had to have been inside [the] building to discover the [prior] fire" and that no smoke was visible from the road. This belief was unambiguously conveyed to the jury during the opening statements, when the prosecutor said that the defendant "showed the firemen where the fire was, because initially they couldn't find it." Further, given Captain Hinkley's characterization of the prior fire as "suspicious," and that the person who set it might come back again, the jury could have misused this information to find that the defendant

was knowingly and purposely starting similar fires around Berlin that evening.

Given the manner in which this evidence was presented to the jury, it is clear the incident of the prior fire was used only to establish propensity. Once the jury was exposed to knowledge of this fire, no curative instruction could remove the taint and, therefore, a mistrial was warranted in this case. *See LaBranche*, 118 N.H. at 178-79. Accordingly, we reverse the convictions, and remand for a new trial.

The defendant also argues that the arson statute does not permit her to be convicted on two counts when she caused damage to only one occupied structure. Because this issue is likely to arise on remand, we will address it. *See State v. Frost*, 141 N.H. 493, 498 (1996).

RSA 634:1 provides:

> I. A person is guilty of arson if he knowingly starts a fire or causes an explosion which unlawfully damages the property of another.

> II. Arson is a class A felony if the property damaged is:

> > (a) An occupied structure and the actor knew it was an occupied structure . . . .

"Occupied structure" means "any structure, vehicle, boat or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present," RSA 635:1, III (1996), "and includes structures appurtenant to occupied structures and seasonal dwellings whether vacant or occupied." RSA 634:1, V(a) (Supp. 2000).

The defendant argues that charging her on two indictments, one based upon the damage to the IGA Foodliner and one based upon damage to the State Liquor Store, is a misapplication of the arson statute. The State argues that because the possessions of two property owners were damaged, the statutory scheme permits two indictments. In order to resolve this dispute, we must examine what the term "property" means in the context of the arson statute.

For a conviction under RSA 634:1, II(a), the term "property" means "an occupied structure." Thus, each occupied structure that is damaged is the "property of another" needed to sustain an indictment under this statute. While the State argues each "loss" or each "place of business" should be the unit of prosecution, the statute focuses, instead, upon each occupied structure.

We agree with the State that the societal impact of arson is less when a person starts an isolated fire, damaging a single home, than when a person causes a high-powered explosion in the business district of a city. Accordingly, our reading of RSA 634:1, II(a) permits the former arsonist to be prosecuted on one count for damage to one occupied structure, and the latter arsonist to be prosecuted for as many counts as there are occupied structures damaged.

■ In this case, the occupied structure is the building at 19 Pleasant Street, which was designed for carrying on business. That the structure contained the businesses of two separate leaseholders is irrelevant under the statute's definition of a single occupied structure. There was only one "occupied structure" damaged by the fire, and thus, only one conviction under RSA 634:1, II(a) can be sustained.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.