**STATE**

v.

**Luis PAYANO et al.**

No. 86–164–C.A.

Supreme Court of Rhode Island.

July 2, 1987.

James E. O'Neil Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., Providence, for plaintiff.

David N. Cicilline, John F. Cicilline, Joseph A. Bevilacqua, Jr., Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendants, Luis Payano and Felipe Estrada, from judgments of convictions of robbery entered in the Superior Court. Following motions for new trial, which were denied, both defendants were sentenced to fifty years at the Adult Correctional Institutions (ACI), of which fifteen were suspended and thirty-five were required to be served. Both the defendants were given fifteen years of probation to commence upon their release from the ACI.

We affirm. The facts of the case are as follows.

On January 27, 1984, at approximately 1:35 p.m. a robbery took place at the offices of Automatic Chain Company (the company or Automatic Chain) located at 181 Corliss Street in Providence. The robbery began when a young unidentified Hispanic male entered the retail section of the company to discuss a gold purchase. After a short period, this young man jumped over the sales counter, displayed a revolver, and ordered the sales personnel to lie on the floor. Almost coincident with this action three individuals entered the guard area of the company. Recognizing one of the individuals as a previous customer, Michael Wilson, a security guard, buzzed open a locked door leading into the vault area. The three individuals immediately came through the door and entered the vault area. One of the three individuals carried a firearm.

Testimony from the employees of the company indicated that the robbery was carried out by four men. The employees were unable to identify the participants. Two of the robbers wore masks. The other two were without masks and were of apparent Spanish or Hispanic origin.

A great many items of jewelry were taken from the retail outlet by the robbers. Some of these items were stamped with the logo or trademark of the company. In addition, gold stored in the company vault was also carried off by the robbers.

The robbers escaped from the factory and retail outlet in a red two-door Ford Torino bearing license plate number OF 826. Later, police discovered that this vehicle was registered to one Daniel Mercedes. Mercedes informed the police that he had loaned the car to his friend, Felipe Estrada, shortly before the robbery.

The security guard, Michael Wilson, testified that a few days before the robbery he had been visited by Estrada and his brother, Luis. During the visit, the brothers questioned Wilson about the security system at Automatic Chain. He had not reported the visit because of a threatening phone call he had received.

Loni Worthington, a female companion of defendants, testified that on the afternoon of the robbery, Estrada and Payano arrived at her house carrying duffel bags filled with gold. She further testified that Estrada told her that the gold had come from a robbery of a gold factory. That afternoon, Estrada gave Ms. Worthington some gold jewelry. Thereafter, Ms. Worthington traveled with Payano and Estrada to New York, where the gold was exchanged for money. Upon her return to Rhode Island, Ms. Worthington was subjected to interrogation by the police. Payano and Estrada learned of this questioning and a few days later took Ms. Worthington to Florida.

During her stay in Florida, Ms. Worthington overheard pieces of conversations in which Payano and Estrada discussed the Automatic Chain robbery. In the course of these conversations Payano mentioned something about somebody's being stepped on. This statement was consistent with the testimony of Roger Boucher, an employee of the company who had testified that at one point one of the robbers stepped on his back.

Payano returned to Providence and was ultimately arrested there. Estrada remained in Florida and was arrested by Florida police pursuant to a request by the Providence police department, which had informed the Metro Dade County police department that Estrada had been indicted for robbery and that a warrant for his arrest was on file in the Providence police department and the Rhode Island Bureau of Criminal Identification. In fact, there were two warrants outstanding for Estrada, one of which had been issued pursuant to the indictment and the other, a bench warrant that had been issued by the Superior Court of Rhode Island as a result of Estrada's failure to respond to the court in respect to another case.

In support of their appeal, defendants raise eight issues. These issues will be considered in the order in which they were presented in defendants' briefs. Additional facts will be supplied as necessary in order to analyze and determine these issues.

## I

### THE MOTION TO SUPPRESS THE FRUITS OF THE SEARCH AT THE TIME OF DEFENDANT ESTRADA'S ARREST

■ Estrada contends that certain fruits of a search that had been made of his dwelling house in Dade County, Florida should be suppressed as a result of an alleged violation of the principles set forth in *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). In substance the Court in *Payton* held that police may not enter the home of one suspected of a felony to arrest the suspect without a warrant absent the existence of exigent circumstances, even though the police have probable cause to believe that the suspect has committed a felony. The case dealt with the entry into the apartment of the defendant, Theodore Payton, in order to effectuate an arrest based upon probable cause to believe that Payton had committed murder. No warrant had been obtained, since a New York statute purported to authorize entry into a dwelling house for the purpose of effectuating an arrest for a felony without the necessity of a warrant. Holding that the statute that authorized such an entry for the purpose of carrying out an arrest for a felony was invalid, the Court suppressed the fruits of a search conducted in Payton's apartment in his absence. The sole fruit of the entry and search was a .30–caliber shell casing that was seized and later admitted into evidence at Payton's trial for murder. The rationale for the *Payton* decision, as expressed on behalf of the majority by Justice Stevens, was a reassertion of the special sanctity of protection accorded the dwelling place by the common law and ultimately by the Constitution of the United States. The majority conceded that there was a diversity of opinion among the common law commentators concerning the right of a peace officer to enter a dwelling in order to implement an arrest. Whereas Blackstone viewed an entry to arrest without a warrant as legal, Coke, on the other hand, viewed such an entry as illegal. The majority believed that the modern trend of opinion, as illustrated by recent decisions of state courts, indicated a movement away from authorizing arrests within dwelling houses based on probable cause alone. Probably the most succinct expression of the Court's holding may be found at the close of the opinion:

"If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 602–03, 100 S. Ct. at 1388, 63 L. Ed. 2d at 660–61.

Therefore, for constitutional purposes the interposition of the judgment of a neutral magistrate between the police and the suspect is the factor of impelling constitutional dimension. Drawing a distinction based upon the jurisdiction in which the warrant was issued would serve no useful purpose since, for all practical purposes, constitutional procedural safeguards have been nationalized following the holding in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Requiring that each jurisdiction issue a separate warrant would provide no perceptible incremental benefit in elevating the protection of the Fourth Amendment. Its sole result would be to apply a technical distinction based upon geographical boundaries that would neither heighten the right to privacy nor add stature to the principle enunciated in *Payton*. We therefore are of the opinion that the warrants that were issued in Rhode Island, and whose validity has not been questioned, would form an adequate basis for the Florida police department, acting on the assumption that said warrants were valid, to enter the dwelling house in question. *See United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (police in one state conducted proper investigatory stop in objective reliance upon "wanted flyer" issued by police in another state on basis of their reasonable suspicion); *Whiteley v. Ward-*

*en,* 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971) (police officers aiding other officers in executing arrest warrants are entitled to assume that adequate information was presented to magistrate to support probable cause).

This court has previously determined in *State v. Baton,* 488 A.2d 696 (R.I. 1985), that Connecticut police officers, acting in reliance upon the existence of a valid Rhode Island warrant issued the previous day, acted within constitutional bounds in arresting the defendant in Connecticut. The arrest did not take place in a dwelling house. However, the existence of the Rhode Island warrant as authority for the Connecticut arrest demonstrates the proposition that the existence of a valid warrant in one state may be utilized as a basis for a lawful arrest in another state, without the necessity of the issuance of a warrant in the responding jurisdiction.

■ At oral argument counsel for defendants asserted that the court, in passing upon the motion to suppress, and the prosecution, in opposing the motion to suppress, did not rely on the Rhode Island warrants but instead relied upon the consent to enter Estrada's dwelling place that was allegedly given by a woman dressed in a nightgown who answered the door at about ten thirty in the morning. The trial justice found that the woman did consent to the entry into the apartment. The trial justice further found that as a result of her attire at that time of the morning the police had the right to draw the inference that "she live[d] there" and that she was a coinhabitant of the apartment.[1] The police, having been informed that Estrada was armed and probably dangerous, followed the woman when she went into a bedroom to find a pair of shoes to give to Estrada. The officers following the woman saw a weapon in an open box, which they then seized.

It is our opinion that there was adequate evidence in the record to support the trial justice's finding that a consensual entry had been made. Further, there seems little question that any coinhabitant of a dwelling may give consent to enter the dwelling and, indeed, may even consent to a search of the dwelling (though no such consent to search is asserted here). The Supreme Court of the United States very clearly indicated in the case of *United States v. Matlock,* 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), that any coinhabitant of a dwelling place may give consent to enter and to a search thereof.

However, in the case at bar the transcript clearly demonstrates, and the trial justice found, that the Metro Dade County police officers were aware of the existence of at least one Rhode Island warrant. We believe that the existence of this warrant and its unquestioned validity fulfills the constitutional requirement of interposition of a neutral magistrate's judgment between the suspect and the arresting officers. Estrada's right to privacy in the dwelling, even without proof of consent, was adequately protected by the existence of the Rhode Island warrant.

Consequently, the decision of the trial justice to suppress neither the evidence seized in the course of arresting Estrada nor the statements given by Estrada after adequate *Miranda* warnings was legally correct.

## II

THE QUESTION OF THE PROPRIETY OF DECLINING TO DECLARE A MISTRIAL AFTER A DETERMINATION BY THE COURT THAT A GUN SEIZED FROM DEFENDANT PAYANO'S APARTMENT WAS NOT ADMISSIBLE IN EVIDENCE

■ Payano argues that he was entitled to a declaration of a mistrial when the trial

---

1. It should be noted that during the events in question two women, both dressed in nightgowns, were present in the apartment. The second woman, described by the police as younger, perhaps a juvenile, emerged from a bedroom separate from Estrada's after the entry of the police. During her testimony at trial, Loni Worthington referred to the woman who opened the door for the police as "Estrada's wife." From Worthington's testimony we infer that she was the second woman, to whom the police made reference during the motion to suppress.

justice determined that a gun, a cartridge, and ammunition that had been seized by the Providence police during his arrest were not admissible into evidence because the prosecution failed to show sufficiently that the gun was connected with the robbery. Payano further argues that there were numerous references during the course of the trial to guns used during the commission of the robbery and also to the exhibits that were ultimately rejected. He suggests that these references were highly prejudicial and warranted a declaration of a mistrial. The trial justice declined to grant a mistrial, stating that he would inform the jury to disregard the portion of the testimony that related to the weapon.

We believe that the prejudicial effect of any reference to these particular exhibits was cured by the instruction to disregard the testimony given by Officer Glancy as well as the general instruction given in the final charge to the jury, limiting the jury's deliberation to "physical exhibits which have been allowed in court as full exhibits" and restricting the jury from considering items stricken from the record.

It should be noted that Payano did not request curative instructions for various other witnesses, such as Loni Worthington, who made reference to the guns.

There is no question that a number of witnesses testified concerning one or more guns used during the commission of the robbery. The sole question the court was called upon to determine was whether the gun offered as exhibit No. 19 was in fact one of those guns that had been used by the robbers. The trial justice determined that insufficient evidence existed to establish the foundation for admission of this weapon.

We have pointed out that the question to be determined when a trial justice considers a motion to pass predicated on allegedly prejudicial comments is whether the proffered evidence or prosecutorial comments are of such a nature as to inflame the passions of the jurors so as to prevent their calm and dispassionate examination of the evidence and their acceptance of the rules of law as enunciated by the court.

*See State v. Brown*, 522 A.2d 208 (R.I. 1987). We have also frequently stated that a decision concerning a declaration of a mistrial is within the sound discretion of the trial justice and that the trial justice's decision will be given great weight and will not be disturbed on appeal unless it is clearly wrong. *See State v. Collazo*, 446 A.2d 1006 (R.I. 1982); *State v. Anil*, 417 A.2d 1367 (R.I. 1980); *State v. Pailin*, 114 R.I. 725, 339 A.2d 253 (1975).

In the case at bar, taking into account all of the evidence that indicated that one or more guns had been used in the course of the robbery, we are of the opinion that the references to a specific gun not admitted into evidence, was not of such a nature as to distract the jurors from a calm and dispassionate examination of the evidence properly before them. We believe that the trial justice was not clearly wrong in declining to grant Payano's motion for a mistrial.

### III

### THE QUESTION OF THE ADMISSION OF THE GUN SEIZED FROM DEFENDANT ESTRADA'S MIAMI APARTMENT INCIDENT TO HIS ARREST

■ Estrada argues that the gun that was seized from his apartment during the course of his arrest should not have been admitted into evidence because the arresting officers had not obtained a search warrant. Many of the legal principles underlying the Metro Dade County officers' presence in the Estrada apartment have been considered under issue I.

We have determined that the officers were properly present in the apartment to effectuate the arrest as a result of the existence of a Rhode Island arrest warrant. After arresting Estrada, who had emerged partly clad from his bedroom, the police were presented with a request by defendant that someone be allowed to get him his shoes. A police officer permitted the woman who had answered the door to obtain the shoes for Estrada, but two detectives followed her because, as they testified,

they did not know whether anyone else might be in the bedroom or whether a weapon had been placed therein. While in the bedroom the officers discovered a gun, which they seized. This gun was later identified as one of the weapons used in the robbery. The trial justice determined that this gun was properly admissible into evidence. It must be borne in mind that the officers had reason to believe that Estrada might be armed and dangerous and that therefore caution had to be exercised in allowing the woman to move into the bedroom. It was only by the exercise of such caution that the police could assure themselves that the woman would not emerge with a weapon rather than a pair of shoes. The presence of a weapon in an open box in the closet was illustrative of the kind of peril against which it was necessary for the police to guard.

The trial justice's finding that the police acted reasonably in accompanying the woman into the bedroom was amply supported by the evidence. The seizure of a weapon in plain view during an intrusion that the police had a right to make was proper. *See Texas v. Brown,* 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Washington v. Chrisman,* 455 U.S. 1, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). Consequently, the trial justice did not err in declining to suppress this weapon.

## IV

### THE FAILURE TO DECLARE A MISTRIAL AS A RESULT OF EVIDENCE OF OTHER CRIMES

■ Both defendants argue that the testimony of Loni Worthington indicating that they had told her that "they were going to put [her] out in the street to make money" was an appropriate reason to compel the trial justice to declare a mistrial since it constituted evidence of another crime with which defendants were not charged. This testimony was not given by Ms. Worthington in response to a question that sought to elicit it, but was in effect blurted out unexpectedly. The trial justice ordered the answer stricken but declined to declare a mistrial. Later on in her testimony Ms. Worthington again referred to a similar statement made by defendants. On this occasion counsel for defendants did not move for a mistrial but did move to strike the statement, and that motion was promptly granted by the trial justice.

Following the rationale discussed under issue II, we are of the opinion that this evidence was not of such an inflammatory nature as to distract the jurors from a calm and dispassionate examination of the evidence properly before them. We must also assume that the jurors would follow the instructions of the trial justice to disregard evidence stricken from the record. *See State v. Fenner,* 503 A.2d 518 (R.I. 1986).

The defendants also argue that evidence relating to the possession of a gun by Payano should have been a compelling reason to declare a mistrial. This argument was in substance asserted by Payano under issue II and was, we believe, satisfactorily discussed in that portion of the opinion. Suffice it to say that the trial justice did not abuse his discretion in declining to declare a mistrial on this ground.

Further, defendants assert that evidence was introduced during the course of the trial that indicated that they had made threats against witnesses in order to prevent them from testifying at the trial. They cite specifically that Ms. Worthington testified to such attempts to persuade her not to testify against defendants. It is undisputed that the trial justice ordered these references stricken from the record. Nevertheless, defendants argue that these suggestions of threats to a witness were so prejudicial that only a mistrial could cure the effect.

■ We have stated on prior occasions that evidence of other crimes may be admissible into evidence if they are relevant and probative in respect to an issue at trial and are not introduced merely to show that the defendant is of bad character. *See State v. Gordon,* 508 A.2d 1339 (R.I. 1986); *State v. Lemon,* 497 A.2d 713 (R.I. 1985); *State v. Cline,* 122 R.I. 297, 405 A.2d 1192

(1979). One relevant fact that may be proven by evidence of threats against a witness is the consciousness of guilt. Most jurisdictions that have considered the question have admitted evidence of threats against a witness for the purpose of demonstrating defendant's consciousness of guilt, as long as those threats can be attributed to the defendant. *People v. Perez,* 169 Cal. App. 2d 473, 337 P.2d 539 (1959); *State v. Graves,* 301 So. 2d 864 (La. 1974); *State v. Pierce,* 474 A.2d 182 (Me. 1984); *Washington v. State,* 293 Md. 465, 445 A.2d 684 (1982); *Saunders v. State,* 28 Md. App. 455, 346 A.2d 448 (1975); *People v. Hooper,* 50 Mich. App. 186, 212 N.W. 2d 786 (1973); *State v. Reuschel,* 131 Vt. 554, 312 A.2d 739 (1973). Consequently, although the trial justice struck reference to the threats from the record, they were probative of defendants' consciousness of guilt and therefore might properly have been considered by the jurors in determining the issue of guilt or innocence. In securing the striking of this evidence, defendants achieved more than they were entitled to secure and consequently cannot complain of the trial justice's failure to declare a mistrial for the attempted introduction of such evidence.

## V

### DEFENDANT PAYANO'S REQUEST TO SEVER HIS TRIAL FROM THAT OF DEFENDANT ESTRADA

■ Payano argues that since the evidence against Estrada was stronger than the evidence against him and since incriminatory statements of Estrada were admitted into evidence, he was entitled to a separate trial. No claim is made, nor could it be, that Estrada's statements in any way implicated Payano. Consequently, there is no constitutional requirement of a separate trial as suggested in *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Further, the type of prejudice sought to be avoided by Rule 14 of the Superior Court Rules of Criminal Procedure was not encountered. This rule, like the *Bruton* imperative, seeks to avoid the joint trial of two defendants when a

statement or confession of either involves the other.

In the case at bar, the trial justice instructed the jury that it should consider Estrada's statements only against him and not against Payano. This case involved two defendants who were charged with a single crime involving a common set of factual and legal elements. This is precisely the type of situation in which two or more defendants may be tried together as suggested in Rules 8(b) and 13. An examination of the record in this case indicates that there were overwhelming reasons for allowing defendants to be tried together, including the valid governmental interest of trying at one time a single crime involving two or more defendants.

The defendants properly concede that it is well settled that a severance is not a matter of right, but rather is an issue directed to the sound discretion of the trial justice. *See State v. Tarvis,* 465 A.2d 164 (R.I. 1983); *State v. Gibbons,* 418 A.2d 830 (R.I. 1980). Under the totality of circumstances in this case, we believe that the trial justice did not abuse his discretion in declining to sever Payano's trial from that of Estrada.

## VI

### THE TESTIMONY OF PENELOPE DUSIO CONCERNING IDENTIFICATION OF JEWELRY

■ One of the state's witnesses at trial was Penelope Dusio, who testified among other things to the presence of the Automatic Chain logo on certain items that had been seized by the police. There is no question that this testimony was important to the state's case since it connected the seized jewelry directly to the robbery. The defendants do not question the relevance of this testimony but claim that it should have been excluded because of a violation of Rule 16(a)(7). This rule provides that upon a request for discovery by the defendant, the state must furnish a summary of the testimony that an anticipated witness is expected to give at the trial. This rule is applicable in the event that no recorded

testimony by such individual or written statement, signed or unsigned, made by such individual exists.

There is no question that defendants made a comprehensive request for discovery and that the prosecution gave no summary of Ms. Dusio's testimony concerning the identification of jewelry through the Automatic Chain logo. However, when the trial justice was asked by defendants to impose sanctions pursuant to Rule 16(i), he declined to do so on the ground that the information had been made available to defendants in the form of a transcript of testimony given by Ms. Dusio at the prior trial of Luis Estrada, a codefendant in this same robbery charge. The trial justice found that the availability of the transcript, which covered the identical subject matter, prevented any surprise on the part of defendants. He therefore determined that there was no violation of Rule 16 requiring sanctions. It is true that there appeared to be some dispute about whether the transcript was made available prior to trial and, if so, to whom. However, considering the totality of circumstances, we are not prepared to say that the trial justice was clearly wrong in finding that there was no prejudice to defendants as a result of the failure to provide a summary of the testimony of Ms. Dusio.

Although this court has been stringent in the application of sanctions for the deliberate violation of discovery rules, *see State v. Wyche,* 518 A.2d 907 (R.I. 1986); *State v. Concannon,* 457 A.2d 1350 (R.I. 1983), we have also stated that the application of sanctions by a trial justice is a decision left to his or her sound discretion and that such ruling should not be overturned absent clear abuse. *See State v. Coelho,* 454 A.2d 241 (R.I. 1982). In *Coelho* we noted that four factors should be taken into account when determining the proper sanction to apply: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and, (4) any other relevant factors." 454 A.2d at 245. The trial justice's finding that no prejudice existed in this case as a result of the availability of the prior recorded testimony

caused him to impose no sanctions upon the state and to allow the testimony to be presented. We are of the opinion that this determination did not constitute an abuse of discretion.

## VII

### THE CROSS–EXAMINATION OF DANIEL MERCEDES

■ The defendants complain that the limitation upon the cross-examination of Daniel Mercedes who testified as a prosecution witness, was a denial of the right to confrontation as guaranteed by the Sixth Amendment to the Constitution of the United States. Mercedes testified that he had loaned his motor vehicle to Estrada on the morning of January 27, 1984, the same day of the robbery. Mercedes further testified that thereafter he did not see the car again for several months. Originally, Mercedes had untruthfully stated to the police that the vehicle had been stolen.

Specifically, defendants' claim that sustaining objections to their questions concerning Mercedes's acquaintance with certain individuals, including codefendants who were not then on trial, denied defense counsel the right of effective cross-examination. The right of cross-examination, as elucidated in *Davis v. Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), has been implemented by this court in a number of cases. *See, e.g., State v. Manocchio,* 523 A.2d 872 (R.I. 1987); *State v. Anthony,* 422 A.2d 921 (R.I. 1980); *State v. Benevides,* 420 A.2d 65 (R.I. 1980). We have recognized, however, that the scope of cross-examination, once sufficient examination has been given in order to satisfy the right to confrontation, is within the sound discretion of the trial justice. *See State v. Waite,* 484 A.2d 887 (R.I. 1984).

We have reviewed the record of Mercedes's cross-examination and find that the trial justice permitted an extensive and searching cross-examination that brought out the possibility that Mercedes may have been involved in the robbery, that he initially lied to the police when questioned about his car, and that he was unable to account

for the source of a downpayment on a home that he had made shortly after the robbery.

The United States Supreme Court has stated that a violation of the right to confrontation is subject to a harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *see also State v. Manocchio*, 523 A.2d 872 (R.I. 1987); *State v. Burke*, 522 A.2d 725 (R.I. 1987). Taking into account the nature of the questions to which objection was sustained in light of the entire cross-examination, we are of the opinion that any error committed in sustaining objections to questions about Mercedes's acquaintance with certain individuals, if error it was, was harmless.

## VIII

### THE EXAMINATION OF JEWELRY SEIZED FROM DEFENDANT ESTRADA AT THE METRO DADE POLICE STATION

■ After his arrest, Estrada was taken to the Dade County jail, where, in accordance with standard police practice, his jewelry was taken from him and he was given a receipt. The items taken were placed in a bag and locked in a drawer. Detective Pellechio of the Metro Dade police department did not know at the time that the items were evidence of the robbery. However, during a telephone conversation with Detective Pedchenko of the Providence police department, Pellechio was informed of the significance of the jewelry. He then withdrew the jewelry from the drawer and bag, examined the items carefully, and noted the Automatic Chain logo connecting the jewelry to the robbery. The defendants argue that this further examination without a warrant was a violation of Estrada's Fourth Amendment rights, necessitating the suppression of the jewelry at trial.

In making this argument, Estrada misconceives the nature of an inventory search. Most recently the Supreme Court of the United States in *Illinois v. Lafayette*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983), pointed out that items may be the subject of search and seizure without a warrant as part of the routine administrative procedure at a police station incident to booking and jailing the suspect.

"The justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search. Indeed, we have previously established that the inventory search constitutes a well-defined exception to the warrant requirement." 462 U.S. at 643, 103 S. Ct. at 2608, 77 L. Ed. 2d at 69.

Similar principles were enunciated in *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). The Court has also held in *United States v. Edwards*, 415 U.S. 800, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974) that a defendant's clothing could be taken from him without a warrant approximately ten hours after his arrest and placement in jail, when subsequent investigation indicated that the clothing might contain paint chips dislodged from a window during the course of an alleged attempt to break and enter. Mr. Justice White, speaking for the court, observed:

"that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other." 415 U.S. at 807, 94 S. Ct. at 1239, 39 L. Ed. 2d at 778.

This court has applied similar principles concerning the right of an inventory search and further analysis of items seized without an additional warrant in *State v. Moretti*, 521 A.2d 1003 (R.I. 1987), and *State v. Beaucage*, 424 A.2d 642 (R.I. 1981).

As a consequence, we are of the opinion that no Fourth Amendment right of Estrada's was violated as a result of the subsequent examination of the jewelry seized

from him prior to his incarceration after said jewelry had been taken as part of the inventory process.

For the reasons stated, the defendants' appeal is denied and dismissed, the judgment of conviction entered in the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.