Merrimack
No. 2011-786

THE STATE OF NEW HAMPSHIRE

v.

LYNN DION

Argued: October 17, 2012
Opinion Issued: February 8, 2013

---

*Michael A. Delaney,* attorney general (*Susan P. McGinnis,* senior assistant attorney general, on the brief and orally), for the State.

*Wescott, Dyer, Fitzgerald & Nichols, P.A.,* of Laconia (*Allison M. Ambrose* on the brief and orally), for the defendant.

CONBOY, J. The defendant, Lynn Dion, appeals her conviction for negligent homicide following a jury trial in Superior Court (*Brown,* J.). *See* RSA 630:3 (2007). On appeal, she argues: (1) that using a cellular telephone while driving does not constitute the requisite wrongful or blameworthy conduct to establish the culpable mental state for criminal negligence and, therefore, that the evidence was insufficient to support her conviction; and (2) that the trial court erred in denying her motion *in limine* to exclude certain of her cell phone records. We affirm.

The jury could have found the following facts. On June 28, 2009, the victim, Genny Bassett, and her friend, Elsa Gonnella, were at Bassett's home in Franklin. Shortly before 9:00 p.m., they began walking to Gonnella's home. They walked slowly, and Gonnella, who was about sixty years old, used an umbrella for support while she walked. After crossing the bridge on Central Street, they stopped at a crosswalk, which had recently been repainted white, was well lit by streetlights, and was marked with a yellow and black pedestrian crossing sign. After checking both ways for oncoming traffic, they began to cross Central Street.

In the meantime, the defendant was driving from Sutton to her home in Franklin. As she turned the corner of North Main Street onto Central Street in the eastbound lane at the west end of the bridge, Bassett and Gonnella were just stepping off the curb on Central Street at the other end of the bridge in the westbound lane. The bridge was level, with no trees or leaves obstructing the view of the crosswalk from the traffic on the bridge. They walked about fifty-four feet, crossing the westbound lane of Central Street and most of the eastbound lane. Gonnella then heard a "bang" and "went down." When she regained consciousness a few minutes later, she saw the defendant on the sidewalk with a cell phone in her hand. Gonnella discovered Bassett, who was wearing white pants and a light-colored denim jacket, in the road nearby, unresponsive. Bassett had been hit by the right front bumper of the defendant's car, resulting in a fatal brain injury.

When Sergeant Richard Carlson of the Franklin Police Department arrived at the scene, the street lights were on, though the sky was not completely dark. The defendant told Carlson that she did not see Bassett and Gonnella in the crosswalk. She stated that just before reaching the end

of the bridge, she heard a loud "pop" and felt glass coming into her car. Although admitting that she made several calls on her cell phone throughout her trip, the defendant said that she made the last call while passing Benson's Auto, which is on North Main Street at the west end of the bridge. She denied that she was on the phone at the time of the collision.

Law enforcement officers conducted reconstruction analysis of the collision. The skid marks on the road, the distance that the victim was thrown forward, and the statement of the defendant all supported the conclusion that at the time of the collision, the defendant's vehicle was travelling at 30 miles per hour. Based upon an average walking speed of four feet per second, the officers concluded that 13.5 seconds elapsed from the time that Bassett and Gonnella stepped off the curb until the impact. They also determined that it would have taken the defendant 1.5 seconds, at most, to react to someone in the road ahead, either by applying her brakes or by turning her steering wheel. Based upon these findings, the officers' accident report reflected their conclusion that, rather than experiencing a momentary distraction such as may be caused by "a sneeze" or "changing of the radio station," the defendant had "a large amount of time and distance to see the pedestrian[s] and bring her vehicle to a stop" and, therefore, the defendant failed to exercise due care in avoiding the collision, negligently causing Bassett's death.

Prior to opening statements, the jury travelled by bus to view the accident scene. The prosecutor instructed the jury to pay particular attention to the lighting in the area, to note whether there were any obstacles to visibility, and to "take a look down Central Street and pay attention to the things that you would pay attention to as the driver in a vehicle."

At trial, over the defendant's objection, the State introduced the defendant's cell phone records for the time that she drove from Sutton to Franklin. The records revealed that during the thirty-seven minute trip, she made and received a number of calls, sometimes using the "call waiting" feature to switch back and forth between conversations. Following calls to other people, the defendant called Judy McIntire, who did not answer. At 9:04:17 p.m., McIntire's voice mail picked up the call. The defendant hung up four seconds later, without leaving a message. McIntire testified that it was unusual for the defendant to call her and fail to leave a message. The next call that the defendant placed was to the Franklin police at 9:05:52 — one and one-half minutes later.

At the close of the State's case, the defendant moved to dismiss, arguing that the only blameworthy conduct the jury could attribute to her was the use of her cell phone while she was driving and that such use is not illegal. The trial court denied the motion. The defense then called its sole witness,

the defendant. She testified that she was "probably an eighth to a quarter of a mile from the bridge" when she called McIntire and that the phone was on the passenger seat when she turned onto the bridge. She stated that she crossed the bridge, did not see anybody walking, saw a "flash of blue" out of the corner of her eye, and heard the windshield pop. When she looked in the mirror and realized there was "somebody in the street," she stopped, got out of the car with the phone in her hand, and called the police.

The jury returned a verdict of guilty. The defendant moved to set aside the verdict, arguing that the evidence was insufficient to support a finding of guilt. The trial court denied the motion. This appeal followed.

The defendant first argues that the trial court erred in denying her motion to dismiss and motion to set aside the verdict because there was insufficient evidence of any wrongful or blameworthy conduct. She contends that using a cell phone while driving is not illegal in New Hampshire and, in and of itself, does not rise to the level of blameworthy conduct required to establish criminal negligence.

■ The issue on appeal as to both the motion to dismiss and the motion to set aside the verdict is the sufficiency of the evidence. *State v. Shepard*, 158 N.H. 743, 745 (2009). We review the entire trial record because, even though the defendant is not required to present a case, if she chooses to do so, she takes the chance that evidence presented in her case may assist in proving the State's case. *State v. Littlefield*, 152 N.H. 331, 350 (2005) (quotation omitted). To prevail, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *Shepard*, 158 N.H. at 746.

The negligent homicide statute, RSA 630:3, I, states: "A person is guilty of a class B felony when he causes the death of another negligently." The Criminal Code further provides that:

> [a] person acts negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation.

RSA 626:2, II(d) (2007).

■ "[A] person charged with criminal negligence may not be convicted on evidence that establishes only ordinary negligence." *Littlefield*, 152 N.H. at 350. "[T]he carelessness required for criminal negligence is appreciably

more serious than that for ordinary civil negligence, and . . . must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong." *Id.* (quotation omitted). As we have clarified, "[c]riminal negligence requires not only the failure to perceive a more than ordinary risk, but also some serious blameworthiness in the conduct that caused it." *Shepard*, 158 N.H. at 746 (quotation omitted).

■■ Citing RSA 265:105-a (Supp. 2012), which prohibits "text messaging" while driving, the defendant asserts that talking on a cell phone while driving is not prohibited and, therefore, cannot constitute the requisite blameworthy conduct. Indeed, that statute specifically excludes from its prohibition "read[ing], select[ing], or enter[ing] a phone number or name in a wireless communications device for the purpose of making a phone call." *Id.* Contrary to the defendant's argument, however, conduct that is, itself, not prohibited, including use of a cell phone while driving, may constitute the requisite blameworthy conduct when such use results in inattention or distraction. Indeed, "the state had no burden to show that driving while using a cell phone is always risky or dangerous, or that it, of itself, creates a substantial and unjustifiable risk, only that [the defendant's] use of a cell phone *in this case* created a substantial and unjustifiable risk because it interfered with her ability to maintain a proper lookout for [pedestrians]." *Montgomery v. State*, 369 S.W.3d 188, 194 (Tex. Crim. App. 2012).

The issue here is not whether cell phone use while driving is *per se* blameworthy. Rather, the issue is whether inattention caused by cell phone use or any other "legal" activity, resulting in the failure to avoid a pedestrian in a crosswalk, demonstrates a level of carelessness the seriousness of which should be "apparent to anyone who shares the community's general sense of right and wrong." *Shepard*, 158 N.H. at 746 (quotation omitted). Here, the jury, whose judgment best reflects "the prevalent sense of the community," *Cloutier v. A. & P. Tea Co., Inc.*, 121 N.H. 915, 924 (1981) (quotation omitted), unanimously determined that the defendant's conduct constituted criminal negligence.

Under New Hampshire law, a driver must "yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk." RSA 265:35 (2004). Bassett and Gonnella were crossing the street in a well lit, newly painted crosswalk that was marked with a pedestrian crossing sign. Bassett was wearing white pants that would have been "very visible at night time." The defendant had 13.5 seconds of clear visibility as she drove across the bridge, during which time Bassett and Gonnella crossed the entire westbound lane and most of the eastbound lane, passing directly in front of the defendant before the front passenger side of her car struck Bassett. The jury, which had taken a view

of the accident scene, could have inferred that the defendant's inattention to the road in front of her demonstrated that she failed to "exercise that degree of care, diligence and safety that an ordinarily prudent person would exercise under similar circumstances." *Com. v. McGrath*, 805 N.E. 2d 508, 513 (Mass. App. Ct. 2004) (quotation omitted).

■ The defendant argues that this case is controlled by *Shepard*. To the contrary, we find the facts here readily distinguishable. In *Shepard*, the defendant's car "inexplicably drifted over the double yellow line and into oncoming traffic for no more than two seconds." *Id.* at 747. We concluded that the defendant's two-second failure to keep his car in its lane did not constitute criminal negligence as a matter of law. *Id.* Here, by contrast, the defendant had 13.5 seconds in which to see Bassett and Gonnella in the crosswalk as she drove across the bridge, her view was unobstructed, and it would have taken her, at most, 1.5 seconds to react upon seeing the women. Nevertheless, at no time before striking Bassett did the defendant slow down, apply her brakes, or swerve, indicating that the defendant had completely failed to see them. This evidence was sufficient to support a conclusion that the defendant's inattention was "a gross deviation from the conduct that a reasonable person would observe in the situation." RSA 626:2, II(d).

"[A]lthough talking on a [cell] phone would not establish negligence as a matter of law, it is at least some evidence from which a jury could infer that the driver was not devoting [her] full time and attention to [her] driving, *i.e.*, that she was not exercising reasonable care under the circumstances." *Butts v. United States*, 822 A.2d 407, 419 (D.C. 2003) (quotation and brackets omitted). Under all the circumstances of this case, we conclude that a reasonable jury, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *See Shepard*, 158 N.H. at 746.

The defendant next argues that the trial court erred in denying her motion *in limine* to exclude "prior phone records" — that is, records of her cell phone calls during the thirty-seven minutes prior to the collision. She asserts that such records were irrelevant, more prejudicial than probative, and used as impermissible character evidence under New Hampshire Rule of Evidence 404(b). We note at the outset that the defendant never filed a motion *in limine* seeking to exclude the phone records. Nor did she object when the State referenced the records in its opening statement. Rather, the defendant waited until the second day of trial to raise the issue for the first time. The trial court noted that it had "some significant concerns . . . as to the timeliness of this motion." *See State v. Guay*, 130 N.H. 413, 419 (1988) (clarifying that objection to prosecutor's opening statement should be made

immediately after State's opening). Although stating that it did not "appreciate issues like this that arise in the middle of trial," the trial court nonetheless considered the motion, and ultimately concluded that the cell phone records were admissible under Rule 404(b) as circumstantial evidence of the defendant's state of mind leading up to the point of impact.

██ Although the defendant sought to exclude the records under Rule 404(b), we conclude that they do not constitute evidence of "other crimes, wrongs or acts" subject to Rule 404(b) but, rather, constitute evidence of conduct that is "inextricably intertwined" with evidence of the crime charged. *State v. Nightingale*, 160 N.H. 569, 574 (2010) (quotation omitted).

> The proper test to apply in deciding the admissibility of "similar acts" or "other acts" evidence depends upon whether the evidence in question is "intrinsic" or "extrinsic" evidence. "Other act" evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.

*United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990); *see State v. Farrell*, 145 N.H. 733, 741-42 (2001) (reversing trial court ruling that specific instances of defendant's conduct in days prior to shooting were not evidence of "other crimes, wrongs, or acts"). The State's contention at trial was that the defendant was so distracted by her cell phone use on the drive from Sutton to Franklin that she "failed to pay due attention and failed to avoid Genny Bassett walking in the road ahead," and that such failure resulted in the collision and Bassett's death. Thus, the cell phone records were evidence of acts intrinsic to the conduct charged in the indictment and, consequently, Rule 404(b) is not implicated. *See Williams*, 900 F.2d at 825. Rather, the applicable test for admissibility of the cell phone records is found in Rule 403. *Nightingale*, 160 N.H. at 574.

██ Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403. The prejudice required to establish reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged. *Id.* Here, the defendant contends that the records of her cell phone use were introduced "to outrage the jury, confuse the issues and cause the jury to base its decision on its anger and frustration of present day drivers [who] talk on the cell phone." We disagree. Sergeant Carlson testified that the

defendant admitted to him that she "had made phone calls throughout her trip." Further, the records of the calls bore directly on the issue of the defendant's attentiveness in the minutes leading up to the collision. Thus, to the extent the jury considered the phone records in its determination, such consideration was not improper. Under the circumstances, any danger of unfair prejudice resulting from the admission of the cell phone records did not substantially outweigh their probative value.

We note that the trial court applied Rule 404(b) in concluding that the defendant's cell phone records were admissible. Although the proper test for admissibility was Rule 403, we nevertheless uphold the court's determination. "[W]here the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." *Id.* at 575-76 (quotation omitted); *cf. State v. Trainor*, 130 N.H. 371, 375 (1988) (noting that Rule 403 analysis is part of analysis under Rule 404(b)).

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.