NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2012-441


THE STATE OF NEW HAMPSHIRE

v.

ADAM WELLS

Argued:  September 18, 2013
Opinion Issued:  February 13, 2014


Michael A. Delaney, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Brianna M. Sinon, assistant appellate defender, on the brief and orally, for the defendant.


BASSETT, J.  The defendant, Adam Wells, was indicted on four counts of aggravated felonious sexual assault and one count of felonious sexual assault against his minor daughter.  See RSA 632-A:2, I(j)(2), :3, III (2007).  The trial court granted the defendant's motion to dismiss one of the indictments alleging aggravated felonious sexual assault (AFSA).  The defendant appeals his conviction on the remaining three AFSA charges and the charge alleging felonious sexual assault (FSA).  On appeal, he argues that the Superior Court (McNamara, J.) erred by:  (1) failing to grant a mistrial after the child testified

to uncharged acts; and (2) admitting testimony regarding out-of-court disclosures made by the child.   We affirm.

I.     Mistrial

One of the AFSA charges on which the defendant was convicted alleges that he had sexual intercourse with his minor daughter in 2010, while another alleges that the defendant digitally penetrated the child in 2011.  During the child's account of the events leading up to the 2010 offense, she testified that the defendant digitally penetrated her shortly before the sexual intercourse. The defendant objected to the testimony regarding the uncharged digital penetration and moved for a mistrial, arguing that the digital penetration testimony was inadmissible under New Hampshire Rule of Evidence 404(b). The State countered that the child was merely describing the details of a single sexual assault.  The trial court initially ruled that the testimony was admissible as part of the course of conduct to show a common scheme; however, the trial court subsequently reconsidered and ruled that the testimony was inadmissible bad act evidence under Rule 404(b).  The defendant again moved for a mistrial; the trial court denied the motion, but later instructed the jury that the testimony was stricken and that it should be disregarded.

On appeal, the defendant contends that the digital penetration testimony was so prejudicial that the instructions could not cure the taint, and, therefore, that the trial court erred when it denied his motion for a mistrial.  He argues that, because one of the indictments alleged digital penetration, prejudice stems from the likelihood that the jury would convict him based upon his propensity to repeatedly commit the same illegal act.  The State counters that the testimony was admissible as res gestae evidence because the challenged testimony described an act of digital penetration that was an essential part of the sequence of events leading to the charged sexual intercourse.  The State further argues that, although the trial court correctly ruled that a mistrial was not necessary, it should have reached that result by ruling that the evidence was admissible, rather than by determining that any prejudice could be cured with jury instructions.  We agree.

"A mistrial is appropriate when the circumstances indicate that justice may not be done if the trial continues to a verdict.  To justify a mistrial, the conduct must be more than merely inadmissible; it must constitute an irreparable injustice that cannot be cured by jury instructions."  State v. Kerwin, 144 N.H. 357, 358-59 (1999) (quotation omitted).  "When reviewing a trial court's ruling on a motion for a mistrial, we recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate."  State v. Ainsworth, 151 N.H. 691, 698 (2005).  "We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an

unsustainable exercise of discretion." Id. To warrant a mistrial, "[t]he prejudicial effects of the inadmissible evidence must be such that the trial court cannot unring a bell once it has been rung." State v. Ayotte, 146 N.H. 544, 548 (2001) (quotation omitted; emphasis added).

This is not such a case: under the circumstances, no mistrial was warranted. We reach this conclusion because the stricken testimony was admissible evidence of a single criminal episode. Therefore, there was no improperly rung bell that needed to be "unrung." See id. at 548-49. Had the trial court not stricken the challenged testimony from the record, the jurors could properly have considered it in determining the issue of guilt or innocence of the charged AFSA. "In securing the striking of this evidence, [the] defendant[] achieved more than [he was] entitled to secure and consequently cannot complain of the trial justice's failure to declare a mistrial for the attempted introduction of such evidence." State v. Payano, 528 A.2d 721, 728 (R.I. 1987).

As in Payano, the challenged testimony should not have been ruled inadmissible under Rule 404(b). Cf. id. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule, "by its very terms, excludes only extrinsic evidence — evidence of other crimes, wrongs, or acts — whose probative value exclusively depends upon a forbidden inference of criminal propensity." United States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005) (quotation omitted).

"'Other act' evidence is 'intrinsic,'" and therefore not subject to Rule 404(b), "when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." State v. Dion, 164 N.H. 544, 551 (quotation omitted). "Intrinsic" or "inextricably intertwined" evidence will have a causal, temporal, or spatial connection with the charged crime. See United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000) (characterizing evidence of "other acts that are inextricably intertwined with the charged offense" as "background evidence"). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." Id. This type of evidence is admissible under the rationale that

"events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of [the charged] act so that it may realistically evaluate the evidence." Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (explaining "same transaction contextual evidence").

The challenged testimony in this case did not provide evidence of "other crimes, wrongs, or acts" governed by Rule 404(b), but rather described an act that was inextricably intertwined with the charged offense because the acts were "part of a single criminal episode," State v. Nightingale, 160 N.H. 569, 574 (2010) (quotation omitted), and describing the digital penetration was necessary to complete the story of the charged sexual intercourse. See Hardy, 228 F.3d at 748. The child described an event that had a close temporal connection to the charged sexual assault — she described events that took place immediately prior to the charged act, provided the jury with a full account of a single event, and enabled the jury to realistically evaluate her testimony. Cf. id. at 749-50 (holding that evidence involving alleged drug transactions occurring six years before conspiracy alleged in indictment was improperly admitted because it did not "explain the charged offense," "complete the story," or "tend to establish the charged conspiracy"). The digital penetration was an essential part of the course of conduct leading to the charged sexual intercourse, and, therefore, was intrinsic to the crime. See Epstein, 426 F.3d at 439; Dion, 164 N.H. at 551; cf. State v. Hall, 148 N.H. 671, 675 (2002) (recognizing that evidence which was "part and parcel" of the same episode was properly evaluated under New Hampshire Rules of Evidence 401 and 403).

We note that we have not previously referred to this type of testimony as res gestae evidence; however, we have held that Rule 404(b) does not preclude the admission of such evidence. See, e.g., Hall, 148 N.H. at 675 (upholding trial court's ruling that testimony that defendant in felonious sexual assault case asked victim to kiss her female cousin did not amount to prior bad act, but was "part and parcel" of same episode); State v. Martin, 138 N.H. 508, 517 (1994) (affirming decision to admit defendant's threats to victim, which included statements that defendant killed victim's dog, because threats "were a material part of the entire course of conduct surrounding the commission of the alleged" aggravated felonious sexual assaults); State v. Kulikowski, 132 N.H. 281, 287 (1989) (affirming decision to admit evidence of coercive behavior occurring years before charged crime of aggravated felonious sexual assault because earlier incidents "constituted evidence of the very threat which coerced the victim during the assaults in question").

Although intrinsic evidence is not barred by Rule 404(b), it must nonetheless satisfy the balancing test set forth in Rule 403. See Nightingale, 160 N.H. at 574 (noting that Rule 404(b) does not apply to inextricably

4

intertwined evidence; applicable test for admissibility is found in Rule 403). Indeed, on several occasions, we have analyzed the admissibility of intrinsic evidence under Rule 403, notwithstanding the fact that the trial court had analyzed the evidence under Rule 404(b). See, e.g., id. at 574-76 (upholding trial court's determination that evidence of conversations regarding inextricably intertwined uncharged drug transactions was admissible, even though court applied Rule 404(b) instead of Rule 403); Dion, 164 N.H. at 550-52 (determining that records of cellular telephone calls immediately preceding a car accident were intrinsic to conduct charged, did not implicate Rule 404(b), and were admissible under Rule 403).

In this case, because the testimony was intrinsic evidence that was inextricably intertwined with the charged act, it should have been analyzed under Rule 403. See Nightingale, 160 N.H. at 574. We will, therefore, utilize the approach that we employed in Nightingale and Dion, and undertake the analysis required by Rule 403. See id. at 574-75; Dion, 164 N.H. at 551-52.

Under the Rule 403 balancing test, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Nightingale, 160 N.H. at 574 (quotation omitted). "Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Hall, 148 N.H. at 675 (quotation omitted). Assessment of the probative value of the evidence entails analyzing the degree to which the evidence is relevant. See Nightingale, 160 N.H. at 575.

"Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." Id. at 574. "Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." Id. "Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." Id. "Among the factors we consider in weighing the evidence are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference." Id. at 574-75.

In order to perform the balancing required by Rule 403, we first consider the probative value of the evidence. Here, the child's description of digital penetration immediately preceding the sexual intercourse was relevant because it was integral to the telling of her story. This gave the jury a more complete understanding of the alleged crime and better enabled the jurors to assess the likelihood that the charged sexual assault occurred.

We next consider whether the danger of unfair prejudice to the defendant from the admission of this testimony substantially outweighed its probative value. See id. at 575. The defendant argues that the risk of unfair prejudice arises from the likelihood that the jury used the testimony to convict him based on his propensity to commit digital penetration, and not on the established propositions in the case. See id. at 574. He argues that his defense was substantially prejudiced by this testimony because the child testified about the same type of conduct that was charged under a separate indictment. However, the challenged testimony was relevant to tell the child's account of the 2010 offense, and, therefore, served a purpose other than proving the defendant's character. See State v. Clay, 79 A.3d 832, 839-40 (R.I. 2013) (upholding decision to allow victim to testify about uncharged sexual assault during her recitation of events surrounding charged kidnapping because challenged testimony was "inextricably woven" with charged crime and served a purpose other than proving character). Because the child mentioned the uncharged act while describing the progressive sequence of events leading up to the charged act, rather than describing a separate, discrete incident, we disagree that there was a substantial risk that the jury would use the testimony as propensity evidence. See Wesbrook, 29 S.W.3d at 115 (finding no error in allowing evidence of three uncharged killings as "same transaction contextual evidence" related to charged capital murder).

Additionally, we conclude that there was only minimal risk that the act described in the testimony would induce the jury to decide against the defendant on an improper or emotionally charged basis. We cannot say that the testimony that the defendant digitally penetrated the child prior to engaging in sexual intercourse with her was likely to have any greater emotional impact upon the jury than the evidence of the charged intercourse. See Nightingale, 160 N.H. at 575 (noting that uncharged sale of drugs was not likely to have any greater emotional impact than charged sale of drugs). Although the challenged testimony may have been prejudicial, it was not unfairly so; we cannot conclude that the evidence was so inflammatory as to arouse the jury's "sense of horror" or to "provoke its instinct to punish." See id. at 574.

Accordingly, because the challenged testimony had probative value in describing the full sequence of events immediately preceding the charged crime and was not unfairly prejudicial, we hold that, as a matter of law, it should

have been admitted into evidence for consideration by the jury. Consequently, the defendant "achieved more than [he was] entitled to secure." Payano, 528 A.2d at 728. He cannot now complain of the trial court's failure to declare a mistrial for the attempted introduction of the admissible testimony. Thus, we hold that the trial court committed no reversible error by denying the motion for a mistrial.

## II.    Out-of-Court Statements

During trial, the defendant asserted that his daughter had fabricated the allegations against him as a result of an argument that had occurred a few days before her initial disclosure. To provide context for the child's disclosure, the State introduced the testimony of Jeffrey Martel, her guidance counselor, and Heather Kingston, a mental health and drug and alcohol counselor. Kingston had given a presentation on sexual harassment at the child's school several days after the argument between the child and the defendant. Kingston testified that, shortly after her lecture, the child had approached her and asked: "What if I have a friend who has something going on," and "What if a friend is — something has happened to them?" Martel testified that, several days after the child had posed these questions to Kingston, the child told him that her father had been touching her and that she wanted it to stop.

The defense objected to the testimony of both Kingston and Martel on hearsay grounds. In response, the State argued that the child's statements were not offered for their truth. The State also asserted that the testimony was admissible because it was relevant to the state of mind of the child, which the defendant had put at issue by asserting that the child had concocted the allegations as a result of a recent argument. The trial court allowed both individuals to testify, and gave limiting instructions to the jurors directing them to consider the testimony not for the truth of the child's statements, but only as evidence of her state of mind at the time of her initial disclosure.

On appeal, the defendant challenges the admission into evidence of the testimony of both witnesses, arguing that the evidence was admitted for the truth of the child's statements (i.e., that the defendant had sexually assaulted her), and that it was not relevant under Rule 401 for any purpose other than to prove that he assaulted the child. The defendant further argues that the testimony did not fit within the prior consistent statement hearsay exception, and that any probative value that the testimony might have was substantially outweighed by the danger of unfair prejudice. See N.H. R. Ev. 403.

The State contends that the trial court sustainably exercised its discretion in admitting the statements. The State also argues, for the first time

on appeal, that the statements made to Martel were admissible under the fresh complaint doctrine,[*] and, further, asserts that Kingston's testimony was not hearsay because she merely recounted a question posed to her by the child, rather than conveying an out-of-court statement made by the child. In the alternative, the State argues that any error that the trial court made in allowing Martel and Kingston to recount what the child said to them was harmless.

Because we agree with the State that any error was harmless, we need not decide whether the testimony was hearsay, or whether the fresh complaint doctrine might apply.

"An error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error." State v. McDonald, 163 N.H. 115, 123 (2011). "An error may be harmless if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." Id. "In determining whether an error was harmless, we consider the alternative evidence presented at trial as well as the character of the inadmissible evidence." Id. The State bears the burden of proving that an error is harmless. Id.

The defendant argues that the testimony was prejudicial because it repeated the allegations of the child through two other witnesses, which created a risk that the jury would confuse repetition with truthfulness. Although we recognize that this is a potential risk, here the trial court specifically instructed the jury not to consider the statements as evidence of what happened, or for the truth of the child's statements. Because we assume that the jury follows the instructions given by the trial court, we conclude that the jury did not consider the challenged testimony as evidence that the alleged assaults occurred. See State v. Giordano, 138 N.H. 90, 94 (1993).

Moreover, the nature and quantity of the alternative evidence of the defendant's guilt also supports our finding that any error in admitting the testimony was harmless. The child testified at trial, providing specific details about the individual assaults, including the locations of the assaults, sequence of events, time of day, outdoor temperature, and her attire. The jury was able to assess her tone and demeanor, and to evaluate her credibility. See State v.

---

[*] For a discussion of the fresh complaint doctrine, see State v. Woodard, 146 N.H. 221, 226 (2001), wherein we upheld a decision to allow the victim to testify to the fact of earlier disclosures of sexual abuse. We stated that such disclosures may be "admissible if offered to explain the circumstances leading to the report which resulted in the defendant's arrest," or "to reduce the risk that juries may equate the delay in making the report which resulted in a defendant's arrest with fabrication." Id.; see also Commonwealth v. Roby, 969 N.E.2d 142, 150-51 (Mass. 2012) (noting that a witness "may testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint" when "the fact of the assault or the issue of consent is contested" (quotation and citation omitted)).

Giles, 140 N.H. 714, 718-19 (1996) (noting that witness's tone of voice and demeanor are two useful tools in the assessment of credibility).

The State, however, did not rely solely upon the child's testimony to prove its case. The State also introduced into evidence a recorded telephone call between the child and the defendant, which the child initiated prior to the defendant's arrest at the request of the team investigating her allegations. The recording of the conversation was played for the jury, and they were also given a transcript to read while they listened. During the call, the child said, "You've been doing these sexual things to me" and the defendant responded that "[i]t will never happen again." When the child asked, "Why would you do this to me?" the defendant initially responded that he was at a loss and then told her that "[t]his was done to me when I was little." He also told her that he was not proud of himself, and that he would go to jail if she made the allegations in public. The jury was able to assess the defendant's tone of voice and behavior during the call and to consider the substance of his statements as admissions of guilt.

In relation to the strength of the State's evidence of guilt, as well as the trial court's instructions to the jury regarding the testimony of Kingston and Martel, their testimony was inconsequential. Neither Kingston nor Martel testified with specificity about the child's allegations. Rather, their testimony focused on the fact and context of their conversations with the child.

Because the alternative evidence of the defendant's guilt was overwhelming, and the testimony of Martel and Kingston was inconsequential, we conclude, beyond a reasonable doubt, that the admission of the challenged testimony was harmless and did not affect the verdict.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.

9