J-S59044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LYNDEL JOHNSON | |
| Appellant | No. 237 EDA 2017 |

Appeal from the PCRA Order January 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010310-2011

BEFORE: BENDER, P.J.E., OTT, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:            **FILED NOVEMBER 30, 2017**

Appellant, Lyndel Johnson, appeals from the order denying his first timely petition for relief pursuant to the Post Conviction Relief Act. 42 Pa.C.S. §§ 9541-9546. Appellant claims the PCRA court erred in dismissing his claims that trial counsel was ineffective for failing to (1) introduce the *crimen falsi* of a witness, (2) object to the lack of a preliminary hearing on a charge of third-degree murder, and (3) object to the Commonwealth's improper reference to his pretrial incarceration. We affirm.

The pertinent facts and procedural history have been summarized as follows:

> [S.R.], the fifteen-year-old niece of the decedent,
> [Shane McCreery,] had, shortly before the August 2,

---

* Former Justice specially assigned to the Superior Court.

2011[,] shooting that is the subject of this case, sold [Appellant] a pit bull for $175, only $60 of which was paid up front. [S.R.] unsuccessfully brought the debt up with [Appellant] twice during the week prior to the shooting.

On August 1, 2011[,] before midnight, [S.R.] and her friend Saleem Johnson, [Appellant's] brother, went to the Chinese store, where she told Saleem about the debt, saying that if she did not get the money, she would have her uncles come and get it for her. [S.R.] and [Saleem] walked to 2311 W. Tioga Street and sat on the front porch with [Saleem's] sister, Alexis, for approximately [thirty minutes]. At some point, [Saleem] went inside, saw [Appellant], and told him what [S.R.] had said about her uncles. [Appellant] came out on the porch and told [S.R.] that he would pistol-whip her if she did not leave the property. [S.R.] left, accompanied by [Saleem], and walked to her house, which is one block north on Marvine Street. On the way there, she called [Jason] Cruz, her stepfather, and told him she had been threatened. Cruz called the decedent, who arrived at [S.R.'s] house ten minutes later, accompanied by his brother Isaac Mercado and his cousin Julio Rodriguez. Cruz arrived ten minutes after that.

[S.R.], her mother, Luz Cruz, her two uncles, her cousin Julio Rodriguez, and [Jason] Cruz then walked south on Marvine Street toward the northeast corner of Marvine and W. Tioga Streets. [Appellant] approached the group on the east side of Marvine Street a little north of the intersection, at which point Mr. Cruz and the decedent confronted him about the money. [Appellant] went into his house at 1138 W. Tioga Street and came out with the money, which he gave to Cruz. The decedent and [Appellant] argued briefly. Then, Cruz punched [Appellant] in the head or chest[.] [Appellant] was knocked back approximately ten feet.

[Appellant] then turned back toward the group, pulled out a gun, and began shooting at them from about ten feet away, standing in the middle of the street between northern corners of Marvine and W. Tioga Streets. [S.R.] and Isaac ran east on W. Tioga Street, and Mr. Cruz, the decedent, and Mr. Rodriguez ran north on Marvine Street

toward [S.R.]'s house. [Appellant] fired shots at the latter group, following them up Marvine Street and fatally wounding the decedent. Ms. Cruz remained standing in the middle of Marvine Street. [S.R.] doubled back to Marvine Street and observed the incident from behind a car. After running approximately forty-five feet up Marvine Street, Mr. Rodriguez pulled out a handgun and gave it to Mr. Cruz, who aimed it at [Appellant] and fired three times. When [Appellant] finished shooting, he ran back toward the corner of Marvine and W. Tioga and headed west on W. Tioga Street.

*Commonwealth v. Johnson*, 3119 EDA 2012, unpublished memorandum at 1-2 (citation omitted).

Appellant was subsequently arrested and, following a jury trial, was convicted of third-degree murder and related offenses. On October 5, 2012, the trial court sentenced him to an aggregate term of eighteen and one-half to thirty-seven years of imprisonment. After the trial court denied Appellant's post-sentence motion, he filed a timely appeal to this Court in which he challenged the weight and sufficiency of the evidence supporting his convictions. We rejected these claims and affirmed Appellant's judgment of sentence. *Id.* at 7. The Pennsylvania Supreme Court reinstated Appellant's right to file a petition of allowance of appeal, and denied the petition on December 17, 2015.

Appellant timely filed a *pro se* PCRA petition on March 28, 2016. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on September 18, 2016, in which he raised three claims of trial counsel's ineffectiveness. Thereafter, the Commonwealth filed a motion to dismiss. On December 5, 2016, the PCRA court issued a Pa.R.Crim.P. 907 notice of

intent to dismiss Appellant's amended petition. Appellant did not file a response. By order entered January 13, 2017, the PCRA court dismissed Appellant's amended PCRA petition. This timely appeal follows. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Appellant raises the following issues:

1. Was trial counsel ineffective for conceding the inadmissibility of *crimen falsi* convictions by a witness, Jason Cruz, and for failing to provide notice of intent to introduce same?

2. Was prior counsel ineffective for not objecting to the third-degree Murder conviction when Appellant was not properly arraigned?

3. Was trial counsel ineffective for not objecting to prosecutorial misconduct wherein Appellant's pretrial detention was clearly elicited?

Appellant's Brief at 4.

The "standard of review of the denial of a PCRA petition is limited to examining whether the court's rulings are supported by the evidence of record and free of legal error." **Commonwealth v. Volk**, 138 A.3d 659, 661 (Pa. Super. 2016) (citation omitted), *appeal denied*, 163 A.3d 401 (Pa. 2016).

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009) (citation

- 4 -

omitted). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* (citation omitted). This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citation and quotation marks omitted). In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). "Counsel cannot be deemed ineffective for failing to pursue a meritless claim." *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*) (citation omitted).

Appellant first claims that trial counsel was ineffective for "conceding that [a] conviction for *crimen falsi* should not have been admitted in relation to Jason Cruz." Appellant's Brief at 7. The PCRA court aptly summarized the background of this claim as follows:

> In his first issue, [Appellant] claims that counsel was ineffective for not advocating that Jason Cruz's prior adjudication for robbery should be used as *crimen falsi* to impeach the witness. Cruz had been adjudicated delinquent for Robbery on October 11, 1995, sixteen years

before [Appellant's] trial. [Appellant] claims that Cruz should have been impeached because he lied about possessing a gun and that his self-defense claim was not properly supported because the threat posed by Cruz was not elicited.

On the first day of testimony, outside the jury's presence, trial counsel sought permission to introduce Cruz's Robbery adjudication for *crimen falsi*. This Court instructed counsel that it would make a ruling after Cruz testified for the Commonwealth. The Commonwealth, however, never called Cruz to testify; instead, [Appellant] presented him as a defense witness. Before calling Cruz as a witness, trial counsel did not renew his request for a ruling on whether Cruz's [R]obbery adjudication was admissible.

PCRA Ct. Op., 1/13/17, at 4-5 (citations and footnote omitted).

Our Supreme Court has summarized the relevant law regarding the admissibility of such convictions for impeachment purposes:

Evidence to impeach the credibility of a witness is admissible so long as it is relevant to that purpose and not otherwise barred. Pa.R.E. 607(b). Under settled law, evidence that a witness has been convicted of a *crimen falsi* is generally admissible, unless the conviction (or release from confinement, whichever is later), is more than ten years old. Pa.R.E. 609(a), (b). It is only when the *crimen falsi* conviction is more than ten years old . . . that evidence of the conviction becomes conditioned on the probative value of the evidence substantially outweighing its potential prejudicial effect. Pa.R.E. 609(b)(1).

***Commonwealth v. Hoover***, 107 A.3d 723, 730-31 (Pa. 2014).

Our Supreme Court has explained that the five factors set forth in ***Commonwealth v. Randall***, 528 A.2d 725 (Pa. 1987), guide the trial court's discretionary determination regarding the use of prior convictions older than ten years:

We explained in **Randall** that the following factors should be considered by the trial court in determining whether previous convictions, which are outside the ten-year time frame, are admissible for purposes of impeachment: (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged; (3) the age and circumstances of the defendant[-witness]; (4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant[-witness's] credibility.

**Commonwealth v. Rivera**, 983 A.2d 1211, 1227 (Pa. 2009) (citation and quotation marks omitted).

Here, the PCRA court determined that Appellant's claim lacked arguable merit and that he could not prove prejudice:

Because [Appellant] cannot demonstrate that this Court, when considering the above-referenced balancing test, would have permitted [him] to use Cruz's juvenile Robbery adjudication, this claim lacks arguable merit. To wit, as the Commonwealth correctly points out, three of the above five factors disfavor the use of Cruz's Robbery conviction. First, significant time had passed since Cruz's adjudication. At the time of trial, Cruz was thirty-two years old. He was just sixteen when adjudicated delinquent for Robbery.

Second, there was no need to impeach Cruz as compared with the availability of another witness to show that [Cruz] had a gun the night of the shooting. That Cruz possessed a gun was consistent with the [Commonwealth's] evidence. S.R. testified that she saw Cruz pull a gun and hold it in a shooting position. Further, police recovered a revolver from the car that Cruz and Rodriguez used to drive the decedent to the hospital.

Third, there were alternative means of attacking Cruz's credibility. Trial counsel elicited testimony from Cruz about being on state parole supervision at the time of the shooting and that he was not permitted to carry a gun, indicating for the jury that Cruz had reason to lie about firing at [Appellant]. For these reasons, no relief is due.

PCRA Ct. Op. at 6 (citations omitted).

Our review of the record supports the PCRA court's conclusions. Moreover, in his brief, Appellant makes bare assertions of prejudice rather than develop an argument that the *crimen falsi* was admissible under the ***Randall*** factors. Thus, Appellant fails to establish sufficient allegations to establish that the PCRA court erred in dismissing this claim of ineffectiveness. ***See Commonwealth v. Pettus***, 424 A.2d 1332, 1335 (Pa. 1981) (stating that a defendant may not argue ineffectiveness in a vacuum). Likewise, Appellant fails to establish that he pleaded and proved each prong of the tripartite test in order to prove his or her ineffectiveness claim. ***See Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011) (stressing that a defendant fails to satisfy his burden of establishing ineffectiveness when he or she makes only boilerplate allegations of no reasonable basis and/or prejudice). Thus, we discern no basis to disturb the PCRA court's conclusion that trial counsel cannot be deemed ineffective for failing to pursue this meritless claim. ***See Loner***, 836 A.2d at 132.

Appellant next claims that prior counsel was ineffective for failing to raise and/or pursue on appeal, the fact that he was convicted of third-degree murder when he was only arraigned on the charge of first-degree murder.

According to Appellant, "he was not on notice as to the lesser-included offense [of third-degree murder] and trial or plea strategy was altered by this arraignment issue. Appellant was under the impression that the Commonwealth was not moving on the lesser-included offense for which he was eventually convicted." Appellant's Brief at 13.

Our Supreme Court has summarized:

> Historically, the settled law in Pennsylvania has been that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged. This doctrine promotes judicial economy, avoids inconsistent results, and enhances the quality of jury deliberations by assuring that factfinders, informed of the option of convicting of related offenses, focus their attention on the presence or absence of those elements that distinguish the greater or lesser offenses. Although Pennsylvania has consistently approved of the doctrine, the more difficult question has always been determining what constitutes a lesser-included offense.

*Commonwealth v. Sims*, 919 A.2d 931, 938 (Pa. 2007) (citations omitted).

The PCRA court found that the record refuted Appellant's claim of lack of notice. We agree. Appellant does not take issue with whether third-degree murder is a lesser-included offense of first-degree murder. Rather, he argues he had no notice that he was also charged with this crime. There is no question that Appellant was originally charged with criminal homicide, and that he rejected the Commonwealth's plea offer to third-degree

murder.[1]  Our review of the record further indicates that Appellant made a motion for judgment of acquittal of first-degree murder, arguing he was guilty of only voluntary manslaughter, and that the trial court charged the jury on all of degrees of homicide.  *See* N.T., 8/22/12, at 212-16; N.T., 8/24/12, at 24-32.  Thus, Appellant's claim of ineffectiveness fails.

Finally, Appellant claims that prior counsel was ineffective for failing to object to the misconduct of the prosecutor because, during Saleem's testimony, she elicited testimony regarding Appellant's pretrial custody. Appellant avers that "the prosecutor purposefully implied that [he] was incarcerated prior to trial by pushing Saleem Johnson on when he had last seen Appellant, knowing that Appellant was incarcerated."  Appellant's Brief at 15.  According to Appellant, the Commonwealth

> committed misconduct and trial counsel was ineffective because there was no basis for allowing this line of questioning because Saleem Johnson was not conspiring with Appellant and was essentially cooperating with the Commonwealth.  The clear implication was that Appellant was in pretrial detention and this undermined the presumption of innocence.

Appellant's Brief at 15.  Appellant's claim entitles him to no relief.

Read in context, the exchange at issue is as follows:

[BY THE PROSECUTOR]:

---

[1] Appellant argued to the PCRA court that he did not have the opportunity to plead guilty to third-degree murder because he was only arraigned for first-degree murder.  The PCRA court found the record refuted that claim, and Appellant has abandoned it in this appeal.

Q      Now, Saleem, you -- or I'll call you Mr. Johnson. I just don't want it to be unclear on the record.

Did you have an opportunity to talk to some detectives pretty soon after the incident?

A      Yes.  They came to my house, I'd say about six o'clock in the morning,

Q      Now, before they got there, did you see [Appellant] again?

A      My brother?

Q      Yes.

A      Yes, I saw him that night.

Q      Where did you see him?

A      I saw him at the Myspace bar.

Q      At the Myspace bar.  Where is that?

A      I don't know what street it's on; I just know where it's at.

Q      Well, how far from your house is it, roughly; how many blocks?

A      About a quarter mile.

Q      How did you get there?

A      Walked.

Q      And how long after this incident did you see him there?

A      About twenty minutes after.

Q      How long did you see him there?

A      It wasn't long, because I left back to my house.

Q      When did you next see [Appellant]?

A      That was the last time I saw my brother until now.

Q      All right.  So let's go back to you talking to the detectives.  Do you remember were that was?

A      No, ma'am.

N.T., 8/21/12, at 171-73.

The PCRA court cites the above exchange and correctly concludes that there was no reference to Appellant's pre-trial incarceration.  The court then notes that "[t]he jury was free to imagine a myriad of reasons why the witness did not see [Appellant] again until trial."  PCRA Ct. Op., 1/13/17, at 8.  The court adds that, "although generally no reference may be made at trial in a criminal case to a defendant's arrest for a previous crime, there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged.  *Id.* (citing *Commonwealth v. Johnson*, 838 A.2d 663, 680 (Pa. 2003)).

We agree that this claim entitles him to no relief.  As seen above, the prosecutor did not "push" Saleem to confess when he last saw Appellant.  After he answered this inquiry, the prosecutor then resumed questioning Saleem about his interactions with the detectives.  Moreover, even if the exchange could be read as referencing Appellant's pretrial incarceration, we discern no basis on which to conclude that a new trial would be required.  *See Commonwealth v. Horne*, 89 A.3d 277, 284 (Pa. Super. 2014)

(explaining that the brief mention of the defendant's incarceration did not unduly prejudice him, as the jury could reasonably infer that he was incarcerated prior to trial because he was accused of committing the robbery at issue, not some previous offense).

In sum, because all of Appellant's ineffectiveness claims are meritless, we affirm the order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017